[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff husband against the defendant wife. The parties were married on March 31, 1968 in Fairfield, Connecticut. There have been three children issue of the marriage, a son, Constantine II (Dino) who is now 24 years of age and twins (Nicholas and Christopher) who are now 23 years of age. The parties separated in February, 1992, and the plaintiff is, at present, living with his widowed sister and the defendant is residing in the family home at 181 Miro Street in Fairfield.
The plaintiff is 69 years of age. This is his second marriage. His first marriage ended in divorce and he had two children of that marriage. His health is generally good, although he had a "back operation" and a prostate operation approximately six years ago. He is a retired high school teacher in the Town of Fairfield where he taught French, Italian, Spanish and Latin for 29 years and was soccer coach. He retired in 1990, but stayed on for another year as soccer coach. He receives a pension of $584.00 per week and social CT Page 9517 security of $106.00 per week. (He worked for ten years before teaching at the United Nations for the Voice of America as an announcer and speaker.) His net income after withholding and state income tax is $603.00 per week.
The defendant is 49 years of age and in good health. She is employed by the State of Connecticut as an adult probation officer in G.A. 2 in Bridgeport. She has held this position for two and a half years and prior to that time held a position as an assistant family relations officer and then support enforcement officer in Stamford beginning in 1980. In her present position she earns $42,000.00 per year. Her financial affidavit should properly reflect a gross of $810.00 per week. She chooses to have deducted an amount for deferred compensation in the amount of $153.90 per week. Adding this back, her net weekly income is $611.54. In 1978 to 1979 she took a five week course in New York and became licensed in hypertricology (hair removal) and worked nights and weekends. She earned $3,000.00 to $4,000.00 per year using an added room in the house for her patients. The defendant terminated the business on December 31, 1991, although an ad for this business continues in the yellow pages and she cares for a few friends without receiving remuneration.
Both parties have graduate degrees, the plaintiff having received his Master's degree and his six and seven year teaching certificates. The defendant has her Bachelor's degree from Danbury State Teacher's College and her Master's degree in Education from Fairfield University. Both parties have, throughout the marriage, worked very hard and both have contributed to the acquisition, preservation and appreciation in the value of their respective estates.
The marriage has broken down irretrievably and there is no hope of reconciliation. The reasons that each of the parties recite for the breakdown of the marriage are diametrically opposed. The plaintiff claims that the defendant was insecure, self-centered, mistrustful and domineering, and recites several incidents of behavior on the defendant's part including a time when she smashed the windshield with a pickax, a time she became violent when the plaintiff gave her "secret" receipe for baklava to a high school student, a time she became upset with the neighbor next door for sending ethnic dishes to the plaintiff, her resentment of the plaintiff's socializing with members of his family, and his phone conferences with his CT Page 9518 relatives in Rumania.
The defendant claimed that there was physical and emotional abuse, that he punched her, threw her up against the wall, blackened her eyes, bloodied her nose, grabbed her by the throat and shoved her, all of which was denied by the plaintiff. The defendant offered no corroborative evidence of any kind to support her allegations. Mr. Cashavalli, the Chairman of the Board of Christian Education and a participant in one of the church counseling sessions, testified that the defendant indicated problems in that session but never indicated a problem of physical violence and that he never felt the defendant was unaccepted by the plaintiff's family members which was one of her complaints.
The court concludes that the breakdown of the marriage was the fault of each of the parties. In a resolution of this matter, which party may have been more at fault really makes no difference in the court's decision in this matter. As previously observed, the income realized by each of the parties is about equal. The defendant, when she reaches retirement age, will enjoy a pension which will permit her to live comfortably (see exhibits F and G). The defendant has net assets of $224,000.00. The plaintiff has net assets of $181,490.00, and if the house is valued at $12,000.00 less to make a true comparison, his net assets are $175,000.00. Because of the age difference of the parties and the plaintiff's retirement, the defendant's opportunity for the future acquisition of capital and income far exceeds that of the plaintiff.
The plaintiff claims reimbursement for a Nordic Trac, purchased by the defendant in December, 1991 for $637.00 and charged to the plaintiff's Discover card. This was purchased by the defendant and described by her as a "family Christmas present" but without the plaintiff's permission and at a point where the plaintiff had already indicated that there would be a dissolution of the marriage. The defendant also took a cash advance of $3,000.00 against the joint Visa card on January 15, 1992 to pay counsel fees (see plaintiff's exhibit B). This should be reimbursed to the plaintiff.
The defendant has requested counsel fees pursuant to the provisions of 46b-62 of the General Statutes. The defendant's counsel has submitted an affidavit of counsel fees and seeks $10,000.00 from the plaintiff. Defendant's financial CT Page 9519 affidavit shows a cash surrender value for an Aetna life insurance policy of $34,337. She has $73,000.00 in a deferred compensation plan and $16,900.00 in IRAs. She has paid $10,000.00 to her counsel.
Having considered all of the criteria of 46b-82 of the General Statutes and the cases, the court shall order that each party shall pay his or her own attorney's fees. The court finds that the failure to award counsel fees would undermine the property distribution it chooses to make in this proceeding. See Maguire v. Maguire, 222 Conn. 32, 44 (1992).
The defendant claims that there is due to the United Illuminating Company an amount of $529.00 incurred while the parties were living together and during the period the plaintiff was paying the bills. This should be paid by the plaintiff to the defendant. The court shall set this off against the Discover card charge so that the net figure owed to the plaintiff is $108.00.
The parties have submitted two appraisals for the marital home, one by Mr. Philip Ball in the amount of $238,000.00 and one by Mr. Steven Breiner in the amount of $226,000.00. The court finds the value of the marital home to be $226,000.00. Assuming a five per cent commission on the sale of the property and payoff of the unpaid principal balance of the mortgage in the amount of $26,731.00 and normal expenses of sale, the court finds the value of each party's equity to be $95,000.00. The court shall allow the defendant the option to purchase the plaintiff's interest in the marital property for that amount.
Having considered all of the evidence and the testimony of the parties, the court finds, in addition to the foregoing findings, as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. The marriage of the parties has broken down irretrievably.
In determining the proper orders in this case, the court must consider the factors set forth in 46b-81 and 46b-82
CT Page 9520 of the General Statutes. With respect to alimony and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970): `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530
(1980), Watson v. Watson, 221 Conn. 698, 710
(1992).
As has been said by the Appellate Court in the recent case of Emanuelson v. Emanuelson, 26 Conn. App. 527, 530, 531
(1992):
 "General Statutes 46b-81 (c) requires the trial court to evaluate certain factors before distributing the parties' assets in a marital dissolution action. Although the court must evaluate all the factors listed, it has broad discretion when applying the statutory facts to assign the parties' assets. O'Neill v. O'Neill, 13 Conn. App. 300, 312, 536 A.2d 978, cert. denied, 207 Conn. 806, CT Page 9521 540 A.2d 374 (1988). . . .
 The statutory factors for determining alimony in 46b-82 are almost identical to the factors used to distribute property in 46b-81 (c)."
The court has considered all of the criteria of46b-81 and 46b-82 of the General Statutes together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982).
Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5
(1985), and that the court need not give equal weight to each factor. Kane v. Parry, 24 Conn. App. 307, 313-14 (1991).
The court enters the following orders:
1. A decree of dissolution of the parties' marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. The family home, located at 181 Miro Street, Fairfield, Connecticut, shall be placed on the market at a mutually agreeable price and the net proceeds split equally between the parties. The net proceeds is that amount left after the payment of the existing mortgage, the real estate commission, taxes and attorneys' fees and other customary expenditures related to the sale. Until the property is sold, each of the parties shall be responsible to pay one-half of the mortgage and real estate taxes and the defendant shall remain in residence and be responsible for the payment of all utilities and maintenance coincident to the occupation of those premises. Furthermore, the defendant shall be responsible for the payment of any utility bills that she may have incurred since April, 1992. The defendant is given the option of purchasing the CT Page 9522 plaintiff's interest in this property for $95,000.00. If the defendant chooses to exercise this option, notice of her intention to exercise said option must be given to the plaintiff within sixty (60) days of the date hereof and the option exercised within one hundred twenty (120) days of the date hereof. The property shall be placed upon the market for sale immediately after the expiration of the sixty (60) day option period if no notice to exercise has been given.
3. The court shall retain jurisdiction with regard to disputes that may arise concerning the sales price for the home at 181 Miro Street, Fairfield, Connecticut, or any other terms or conditions of sale upon which the parties are unable to agree.
4. The defendant shall reimburse the plaintiff the sum of $3,108.00, the same to be paid within thirty (30) days from the date hereof.
5. All other assets, including bank accounts, stocks, IRAs, deferred compensation plans, pension accounts and other investment vehicles shall be retained by the party in whom title is presently vested and free of any claim or demand by the other party.
6. The plaintiff shall retain his 1988 Honda Civic. The defendant shall retain her 1991 Nissan Stanza.
7. Each of the parties shall be entitled to retain all personal clothing and jewelry. The plaintiff shall be entitled to the camcorder and one of the four (4) color televisions presently in the family home (defendant shall have first choice). All other items of personal property presently contained in the family home at 181 Miro Street, Fairfield, Connecticut shall be divided by the parties by agreement. This court shall retain jurisdiction over any disputes. In the event of any such dispute the parties are first referred to the Family Relations Division for resolution of such disputes or differences. In the event the parties are unable to reach agreement with the assistance of the Family Relations Division, they shall return to court for further orders.
8. Neither party shall be entitled to receive alimony one from CT Page 9523 the other.
9. Each party shall pay his or her own attorney's fees.
10. Each party shall pay the liabilities reported in his or her financial affidavit and shall indemnify and hold harmless the other party from any claim or demand thereon except for the People's joint Visa account which shall be wholly the plaintiff's obligation.
Judgment shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE