[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married on February 21, 1981. They have three children two of whom are currently minors. The oldest, Cara is currently a senior in college. The plaintiff ("husband") is paying her tuition. The other two children, Ryan born September 20, 1984 and Courtney born November 11, 1989, presently reside with the mother in Greenwich. There was some testimony that the son spends a considerable amount of time with the father at his home in Stamford. According to the testimonies of the parties they ceased marital relations in 1996 and finally separated in November of 1999.
The husband is 44 years old and describes his health as excellent. He has a bachelor of arts and political science from Boston College and a JD from Fordham Law School in 1983. He does not practice law, in fact he has never practiced law but has been employed virtually his entire career by Bessemer Trust Company (now Bessemer Group) in New York City. There he has progressed from an Assistant Account Manager where he started during law school to his current position as Managing Director. He has a current base salary of $300,000. In addition, he receives a bonus at the end of the calendar year, as well as an "enhanced bonus" early in the following year. The latter is paid over the course of three years, but as a condition thereof, he must still be employed by Bessemer. He is entitled to deferred compensation, stock options and profit sharing and participates in the company pension plan.
The wife is also 44 years old and is in generally good overall health. However, she does suffer from anxiety disorder, hypoglycemia and acid reflux disease. She is treating her anxiety through naturopathy. She also has a degree in communications from Boston College. After college she worked for a short time outside the home for an advertising agency where she earned a maximum of $13,000 per year. For the last 19 years she has principally worked as homemaker and until their separation has been supportive of her husband's career. The testimony that she was and continues to be a good mother was uncontroverted. In fact, it was stipulated on the record that she is "an excellent mother" and that she carries her maternal responsibilities to the "nth degree." The wife's earning capacity is a question for this court to determine. She has taken and completed a two-year course and obtained a certificate in massage therapy. In fact she is licensed in both the states of Connecticut and New York. If it has not already done so, she-anticipates-that her CT Page 7836 certificate will lapse. She has no plans to continue that occupation which she describes as "physically demanding." The court heard from a Ms. Scoboria, who testified regarding the qualifications for being certified/licensed massage therapist. She indicated that the range for a first year person attempting to start a practice would be between $350 and $700 per week. This would increase gradually until the third year when the person could be expected to earn approximately $1000 a week in that field. The wife indicated that she has no immediate plans for work, but does plan to return to work sometime after the parties' daughter Courtney goes to college. Her illness has apparently not impacted her ability to function within and without the home. The court heard extensive testimony that the wife participates in a variety of activities including singing lessons, ballroom dancing, workshops, yoga, volunteer work at St. Leo's, and an organization called Birthright. She has also traveled extensively including California, Costa Rica, and France.
The parties lived in several homes, the last of which at the time of the separation was the marital home at East Hunting Ridge Road in Stamford. That property was purchased in joint names in 1988 for the sum of $404,000. The husband testified that they put in approximately $50,000 in improvements. He testified that he believed that the property is worth $590,000 and this was substantiated by expert testimony offered by an independent appraiser. The wife also offered testimony with regard to this property and indicated that she thought its value was worth approximately $650,000. Her testimony was buttressed by an independent appraiser who appeared on her behalf who placed the value at $640,000. The husband continues to reside in that home.
In April of 1998 the wife purchased with marital funds a real property located at 33 Center Drive, Greenwich, Connecticut. Over the course of the next year or so, she used an additional $140,000 in monies provided by the husband to improve the place. It is there she currently resides with the two minor children. The husband believes that the property is worth $500,000. This was buttressed by appraisal testimony offered by his expert. The wife believes the property approximately $435,000, again buttressed by testimony by her witness.
At present there are no temporary orders, however, the husband has been paying the wife a voluntary monthly payment of $9000. He recently received his annual bonus most of which was disbursed in an accounting provided to the court.
Aside from the real estate, the only other significant assets stem from the husband's employment, in particular the pension, and profit-sharing plans, both qualified and non qualified. CT Page 7837
The parties saw a marriage counselor at least by 1995, and possibly as early as 1993. The wife moved out of the bedroom in November 1996 during the husband's recuperation at home from a broken collarbone. The parties had no sexual relations thereafter, the wife testifying that she was "not comfortable with the sexual part of the relationship." In fact, while the husband testified that while he wanted to continue the marriage, his wife "wanted out." Having heard the testimony and observed the parties over the course of the trial, the court believes that the wife began a unilateral, deliberate, and gradual physical, financial, and emotional disengagement from the relationship from at least November 1996, culminating in a total break in November 1999. This, the court finds to be the primary reason for the irretrievable breakdown of the marriage.
The parties were heard over the course of four days. Additional evidence was offered by way of a report dated March 15, 2002, and filed by the husband with the court, regarding the exercise of certain stock options by him.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in General Statutes §§ 46b-56, 46b-81, 46b-82, 46b-84, and46b-215a, including the Child Support and Arrearage Guidelines Regulations, hereby makes the following findings:
1. That it has jurisdiction.
2. That the allegations of the complaint are proven and true.
3. That the marriage of the parties has broken down irretrievably, and that ample evidence exists that both parties have contributed to said breakdown; and that the most significant cause of the breakdown was the wife's conscious and unilateral decision to disengage from the marriage both emotionally and financially.
4. That the parties have entered into a Stipulation regarding custody and visitation dated March 13, 2002, as on file with the court (#131.10); and that the court finds same to be in the best interest of the minor children.
5. That, taking into account the earning capacity of the wife, the combined net weekly income of the parties is in excess of the maximum Child Support Guidelines amount; that presumptive minimum basic child support is $566.00 per week; and that the husband's share is $526.00; and that the court finds that it is appropriate and equitable to apply the CT Page 7838 deviation criteria set forth in Section 46b-215a-3 (b)(5) of the Child Support and Arrearage Guidelines Regulations on the basis of the coordination of total family support.
6. That the testimony and evidence support the fact that the wife has an earning capacity of at least $30,000 per annum; that the wife suffers from a form of an anxiety disorder which places some limitations upon her ability to obtain and hold employment; that her overall health, age, and her educational background, the ages of the minor children, and the length of the marriage are significant factors in the court's orders; and that it is equitable and appropriate that the court award time-limited alimony; and that it also is equitable and appropriate for the court to consider her earning capacity in making its orders regarding alimony and child support. Hart v. Hart, 19 Conn. App. 91, 94-95 (1989).
7. That having considered the testimony and evidence, the court finds the fair market value of the real estate at 33 Center Drive, Greenwich, Connecticut to be $500,000; that there is a mortgage thereon with a current balance of approximately $225,500; that the equity therein is $274,500; that the property is in the sole name of the wife; that the wife purchased same with approximately $80,000 in marital funds in April 1998; that she invested an additional $140,000 in marital funds by way of improvements thereto; that said asset is marital property; and that it is equitable and appropriate that the court consider same in arriving at an equitable distribution.
8. That having considered the testimony and evidence, the court finds the fair market value of the jointly owned real estate at 276 East Hunting Ridge Road, Stamford, Connecticut to be $640,000; that there is a mortgage thereon with a current balance of approximately $240,000; and that the equity therein is $400,000.
9. That the husband has a vested interest through his employment in certain profit sharing and pension plans as well as a pension plan; that a substantial portion of these assets are in the form of non-qualified plans; and that it is equitable and appropriate that the court give consideration to the tax consequences associated with the transfer and division of same. Rolla v. Rolla, 48 Conn. App. 732, 745-747 (1998).
10. That it is equitable and appropriate that the wife share in all stock options, both vested and now-vested, that were granted to the husband during the period beginning with the date of his employment with Bessemer Trust to and including December 31, 1999; and that it is also equitable and appropriate for the court to adjust any award to the wife in light of the fact that the parties have been living separate and apart since November 1999, and since that date her contribution to the CT Page 7839 maintenance and preservation of these assets has been limited. Wendt v.Wendt, 59 Conn. App. 656, 663-64 (2000).
11. That, while the wife has requested an award of counsel fees, no sufficient and credible evidence was introduced by her regarding the legal fees and costs incurred by her in connection herewith with which the court could make a determination of reasonableness; that, however, the court is aware that she has, in fact, incurred attorney's fees; that to require the wife, who has a modest earning capacity and a large measure of responsibility for the two minor children, to pay these fees in their entirety from her portion of the marital assets awarded to her by virtue of this Memorandum of Decision would undermine the purposes of same; and that it would be fair and equitable for the husband to pay a portion of same. Maguire v. Maguire, 222 Conn. 32 (1992)
12. That on March 1, 2002, the husband exercised 5, 103 Bessemer Group stock options; that he borrowed sufficient funds for the exercise thereof together with taxes thereon; that the exercise resulted in a net equity of $95,981.22.
 ORDER
IT IS HEREBY ORDERED THAT:
1. The marriage of the parties is hereby dissolved, and they are each hereby declared to be single and unmarried.
2. Custody the minor children shall be in accordance with the Stipulation of the parties dated March 13, 2002 (#131.10) as on file with the court, which Stipulation is incorporated herein as Schedule A.
3. Commencing July 1, 2002, and monthly thereafter, the husband shall pay to the wife the sum of $2,000.00 as and for child support, until such time as the oldest child shall reach the age of eighteen years, at which time child support for the remaining child shall be adjusted in accordance with the then existing Child Support Guidelines or as a Court may otherwise direct. The foregoing notwithstanding, if any child shall turn eighteen years old and is still in high school, then, in that event, the child support shall continue until the first day of next month following graduation from high school or their nineteenth birthday, whichever shall sooner occur, pursuant to Section 46b-84 (b) C.G.S.
In addition to the sums set forth above, as and for additional child support, the husband shall contribute to the private school education of each of the minor children up to and including high school, an amount not to exceed $15,000 per year per child. Any sums in excess of this amount CT Page 7840 shall be divided by the parties 25% to the husband and 75% to the wife.
4. Commencing July 1, 2002, and monthly thereafter, the husband shall pay to the wife the sum of $6,000.00 as and for periodic alimony, until the death of either party, the remarriage of the wife, or June 30, 2008, whichever shall sooner occur. Thereafter, commencing July 1, 2008, and monthly thereafter, the husband shall pay to the wife the sum of $4,000.00 as and for periodic alimony, until the death of either party, the remarriage of the wife, or June 30, 2017, whichever shall sooner occur.
In addition, commencing July 1, 2002, for so long as he has anoutstanding alimony obligation to the wife, within two (2) weeks after receipt by the husband of any bonus or other additional cash compensation from his employment, the husband shall pay to the wife 30% of any such gross bonus or cash compensation up to and including $150,000, and 15% of the next $150,000 in any calendar year, as and for periodic alimony, until the death of either party, the remarriage of the wife, or June 30, 2017, whichever shall sooner occur. The husband shall provide satisfactory evidence to the wife of this bonus or additional cash compensation at the same time that he makes payment pursuant hereto. Any bonus or additional cash compensation in excess of $300,000 shall be free and clear of any claims by the wife for alimony.
5. As to the jointly-owned real estate at 276 East Hunting Ridge Road, Stamford, Connecticut, within fourteen (14) days from the date hereof, the wife shall convey her interest therein to the husband by means of a fully-executed Quit Claim Deed along with completed Conveyance Tax Forms. Thereafter, the husband shall have exclusive possession of the real estate and shall be responsible for the payment of all mortgages, liens, taxes, and insurance, and shall indemnify and hold the wife harmless from any further liability thereunder.
6. The wife shall have exclusive possession of the real property located at 33 Center Street, Greenwich, Connecticut, and shall retain title to same free and clear of any claims of the husband, subject to any existing mortgages and liens thereon.
7. Personal property shall be divided as follows:
A. The children's furniture shall remain in the wife's residence.
B. The home furnishings (other than the children's furniture) in each of the respective households shall remain the property of that party free and clear of any claims by the other. CT Page 7841
 C. Each party shall be entitled to keep the automobile which they are currently driving (whether owned or leased) free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same. Specifically, the husband shall be entitled to the 1998 Nissan Pathfinder.
 D. The wife shall be entitled to retain the following assets free and clear of any claims by the husband:
 1. The current balances in her Citibank High Yield Money Market (#1219362107) and Checking (#97018628) accounts.
 E. The husband shall be entitled to retain the following assets free and clear of any claims by the wife:
1. The current balance in his Bank of New York account.
2. CSFB/DLJ.
3. Old Westbury Private Capital Fund, II, LLC.
F. The following assets shall be divided equally by the parties:
 All shares of Bessemer Group stock currently held in the name of the husband (or the husband as trustee for the wife), whether or not as a result of the exercise of any options, net of all taxes and loans. The husband may continue to hold the wife's share as trustee until such time as she may direct that he liquidate all or a portion thereof. The husband shall liquidate same at the next available date permitted following the wife's instructions. So long as he holds any of her shares as trustee, he shall pay the wife one-half of the net dividends received thereon (after payment of interest on the loan used to exercise the options) within two (2) weeks of receipt of same.
8. The husband shall maintain and pay for health insurance for each of the minor children so long as he shall be obligated to pay child support for that child. Un-reimbursed medical, dental, orthodontic, optical, pharmaceutical, psychiatric, and psychological expenses for the minor child, shall be divided by the parties, 75% by the husband and 25% by the wife. The provisions of Section 46b-84 (e) C.G.S. shall apply.
9. The husband shall promptly notify his employer as to the change of marital status and shall cooperate with the wife in obtaining continuation health insurance coverage as provided by state and federal law. The husband shall be responsible for the payment of any premiums due CT Page 7842 for such coverage.
10. The husband shall maintain the existing group term life insurance in the amount of $900,000, and shall name the wife and minor children as beneficiaries thereof in the amount of $300,000 each, so long as same is an incident of his employment and can be maintained at a reasonable premium, and, except as provided herein, for so long as he has an obligation to pay alimony and child support under the terms of this decree. Upon the termination of his child support obligation for each child, he may reduce his obligation to provide life insurance by $300,000. In the event that his alimony obligation shall terminate and he still has a child support obligation, his obligation to provide life insurance for the benefit of the wife shall also terminate.
11. The retirement assets, deferred bonuses, and stock options shall be divided as follows:
A: As to the Retirement Plan of Bessemer Trust Company (Pension):
 Effective as of the date of this Memorandum of Decision, that portion of the Retirement Plan of the Bessemer Trust Company ("Plan") of the husband through his employer and vested and accrued as of the date of this Memorandum of Decision, shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by the husband's attorney, 50% to the husband and 50% to the wife. Unless the parties shall otherwise agree, the husband shall elect a joint and survivor annuity, and in the event that the husband shall predecease the wife prior to drawing his pension, the wife shall be entitled to 100% of that portion of the survivor benefit vested and accrued as of the date of this Memorandum of Decision. Any benefit vesting and accruing thereafter shall belong to the husband. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to the preparation and filing of the QDRO. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
 B. As to the Profit Sharing Plan of the Bessemer Trust Company (Non-Qualified):
The husband shall be entitled to all right, title, and interest in and to the retirement benefit known as the non-qualified portion of the Profit Sharing Plan of the Bessemer Trust Company free and clear of any claims by the wife, who shall promptly execute and deliver to the husband any and all documentation necessary to waive her rights thereto. CT Page 7843
 C. As to the Profit Sharing Plan of the Bessemer Trust Company (Qualified):
 Effective as of July 1, 2002, the then balance of the qualified portion of the Profit Sharing Plan of the Bessemer Trust Company ("Plan") of the husband through his employer, together with any interest and/or additions accrued thereon as of the actual date of distribution, shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by the husband's attorney, 10% to the husband and 90% to the wife. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to the preparation and filing of the QDRO, including, but not limited to prior and current balances and prior account activity. No withdrawals, distributions, or transfers shall be made regarding the Plan except as consistent with this order.
D. As to the Deferred ("Enhanced") Bonuses:
 The net amount of the deferred bonuses due and payable to the husband under the 2000 and 2001 plans, payable on February 15, 2003 and February 15, 2004, shall be divided equally after withholding of appropriate estimated state and federal income taxes. The husband shall make payment to the wife of her share within fourteen (14) days from receipt by him together with and accounting to the wife of the amount received and the taxes withheld.
E. As to the Bessemer stock options (vested and non-vested):
 The husband and wife shall share equally all vested and unvested Bessemer stock options, both time-based and performance-based, granted on or before December 31 1999. The remaining options, vested and unvested, both time-based and performance-based granted on or after January 1, 2000, shall belong to the husband free and clear of any claims by the wife.
F. Miscellaneous:
 Any attorney fees and costs incurred in the preparation and filing of the QDRO's shall be borne solely by the husband. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of any QDRO and the division of the retirement plans.
12. Except as otherwise set forth herein, the parties shall each be responsible for the debts as shown on their respective financial CT Page 7844 affidavits, and they shall indemnify and hold each other harmless from any further liability thereon.
13. The wife shall be entitled to claim the personal exemption for each of the minor children commencing with the tax year 2002 and thereafter.
14. The court hereby reserves jurisdiction regarding any award of attorneys fees and costs incurred herewith, provided, however, that should no motion for counsel fees, together with supporting evidence in the form of an affidavit of counsel fees, be filed within three (3) weeks from the date of this Memorandum of Decision, the issue shall be closed, and each party shall be responsible for all fees and costs incurred herewith.
15. The Court hereby orders an Immediate Wage Withholding Order pursuant to General Statutes § 52-362 in order to secure the payment of the alimony order.
THE COURT
 ___________________ SHAY, J.
[EDITORS' NOTE: THE ”STIPULATION RE: JOINT CUSTODY” IS ELECTRONICALLY NON-TRANSFERRABLE.]