******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# SHAYE MCCORMICK *v.* DAVID TERRELL
## (AC 43946)

Alvord, Cradle and Lavine, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff had previously been dis-
solved, appealed to this court from the decision of the trial court granting
the plaintiff's postjudgment motion for attorney's fees. The defendant
claimed that, in ordering him to pay the attorney's fees of the plaintiff,
the trial court applied the incorrect legal standard in that it failed to
determine that the plaintiff lacked ample liquid funds to pay her own
attorney's fees. *Held* that the trial court did not abuse its broad discretion
in its award of attorney's fees to the plaintiff: contrary to the defendant's
contention, the court was not required to make a finding that the plaintiff
lacked ample liquid funds to pay her own attorney's fees, as the court
explicitly concluded that a denial of the plaintiff's motion for attorney's
fees would undermine other financial orders of the court, one of two
circumstances our Supreme Court has recognized that warrant an award
of attorney's fees; accordingly, the lack of an explicit finding that the
plaintiff lacked ample liquid assets to pay her own attorney's fees had
no bearing on the basis for the trial court's award.

(*One judge dissenting*)

Argued September 14—officially released November 2, 2021

*Procedural History*

Action for the dissolution of a marriage, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Fairfield and tried to the court, *Winslow, J.*;
judgment dissolving the marriage and granting certain
other relief; thereafter, the court, *Egan, J.*, granted the
plaintiff's motion for attorney's fees, and the defendant
appealed to this court. *Affirmed.*

*Sheila S. Charmoy*, with whom, on the brief, was
*Scott M. Charmoy*, for the appellant (defendant).

*Shaye Anne McCormick*, self-represented, the appel-
lee (plaintiff).

*Opinion*

CRADLE, J. In this marital dissolution case, the defendant, David Terrell, appeals from the trial court's post-judgment award of attorney's fees in the amount of $7500 to the plaintiff, Shaye McCormick, for her defense of a motion to modify the dissolution judgment filed by the defendant. The defendant claims that, in ordering him to pay the plaintiff's attorney's fees, the trial court applied the incorrect legal standard in that it failed to determine that the plaintiff lacked ample liquid funds to pay her own attorney's fees.[1] We affirm the judgment of the trial court.[2]

The trial court set forth the following relevant factual and procedural history. "The parties appeared before the court on the plaintiff's motion for attorney's fees. She seeks $7500 for a retainer to be paid to counsel in connection with a hearing to be held on November 26, 2019, in regard to child support. The plaintiff has exhausted her initial retainer in the amount of $7500, and she owes additional attorney's fees.

"The court has had an opportunity to examine the parties' respective financial affidavits and exhibits submitted into evidence. Both parties testified.

"The court finds that the parties' marriage was dissolved on May 9, 2011. Pursuant to the separation agreement incorporated into the dissolution judgment, the defendant paid the plaintiff alimony in the amount of $1 per year for eight and one-half years,[3] and unallocated alimony and child support for the same period under the terms of the separation agreement.

"The plaintiff owns the former marital residence, and she pays the expenses related to it. She pays for various daily expenses related to the parties' minor children. The parties split other expenses such as music lessons, school events and trips on a pro rata basis under the dissolution judgment. The plaintiff's share is 45 percent.[4] She has approximately $1000 combined in her two checking accounts. The plaintiff has available credit on her credit cards, but she does not wish to charge further on them, because she charged the first legal retainer and will be subject to paying interest on additional charges.

"The court finds that the plaintiff is presently employed part-time, working approximately twenty to twenty-five hours per week. She began working in May of 2018. Her hours worked per week fluctuate based upon her family's schedule and periods such as school vacations. Time off is unpaid.

"Until around the time she was hired in her present position, the plaintiff was unable to maintain any steady employment, or develop private yoga clients, because of her necessary extensive role in assisting the parties' son. Due to his special needs, she provided transporta-

tion to and from school, frequently responded to emergencies and issues that arose during the school day, and addressed his needs both after school and at night. The parties' younger daughter also required her presence at home. The plaintiff relied upon the alimony and child support to support the family, and for expenses such as to pay all costs associated with the residence, make home improvements, provide activities for the children and her return to school.

"The plaintiff recently earned her graduate degree. She is now actively seeking full-time employment. She sent out a number of resumes, but has not received any offers to date. She desires to return to work full-time in the field of her graduate degree or as a paralegal in order to earn a higher income.

"The parties' son is now in high school. He has been able to transition well. The plaintiff continues to play an essential role in helping him manage several aspects of his personal life and academic issues. The plaintiff has not presently sought to work a second job because of her current work schedule, job search efforts and parenting obligations. The court finds that the plaintiff's current work schedule pending a new position is appropriate.

"The defendant is an executive at Blackstone, LLP. He is a certified public accountant and holds a graduate degree. His financial affidavit reflects that his net salary, with bonus, is $387,816, which he expects to receive in December, 2019. He is not looking to leave, and does not have any offers. The defendant funds his 401 (k) each pay period. He has over $60,000 in accounts including $3000 in a private equity account. He has made approximately three private equity investments amounting to roughly $10,000. The defendant contributes $96 on a weekly basis as a charitable contribution to a local youth rugby program.

"The defendant owns a home and leases an apartment in New York City for the convenience of not commuting during the work week. He has an outstanding loan of $220,000 to his parents for which he has made no payments until this year.

"The court finds that there is a significant discrepancy between the parties' financial resources, including liquid assets. The court finds that the attorney's fees and costs sought by the plaintiff are reasonable under the circumstances. . . . The court further finds that failure to award fees would substantially undermine other financial orders of the court." (Citation omitted; footnotes added.) The court thus granted the plaintiff's motion and ordered the defendant to pay $7500 toward her attorney's fees. On January 23, 2020, the court denied the defendant's motion to reargue. This appeal followed.

"In dissolution and other family court proceedings,

pursuant to [General Statutes] § 46b-62 (a), the court may order either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the equitable criteria set forth in [General Statutes] § 46b-82, the alimony statute. That statute provides that the court may consider 'the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81' for the assignment of property. General Statutes § 46b-82. Section 46b-62 (a) applies to postdissolution proceedings because the jurisdiction of the court to enforce or to modify its decree is a continuing one and the court has the power, whether inherent or statutory, to make allowance for fees. . . . Whether to allow counsel fees, [under § 46b-62 (a)], and if so in what amount, calls for the exercise of judicial discretion. . . . An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Citation omitted; internal quotation marks omitted.) *Leonova* v. *Leonov*, 201 Conn. App. 285, 326–27, 242 A.3d 713 (2020), cert. denied, 336 Conn. 906, 244 A.3d 146 (2021).

Our Supreme Court has "stated three broad principles by which these statutory criteria are to be applied. First, such awards should not be made merely because the obligor has demonstrated an ability to pay. Second, where both parties are financially able to pay their own fees and expenses, they should be permitted to do so. Third, where, because of other orders, the potential obligee has ample liquid funds, an allowance of [attorney's] fees is not justified." *Turgeon* v. *Turgeon*, 190 Conn. 269, 280, 460 A.2d 1260 (1983).

The self-stated "crux" of the defendant's appeal is that the trial court applied an incorrect legal standard in granting the plaintiff's motion for attorney's fees because it "failed to make the requisite predicate finding" that the plaintiff lacked ample liquid funds to pay her own attorney's fees. Contrary to the defendant's contention, this court has held that the trial court is not required to make such an express finding. See *Leonova* v. *Leonov*, supra, 201 Conn. App. 328–29. This court's holding in *Leonova* is consistent with the well established and related principle that, "[i]n making an award of attorney's fees [pursuant to §§ 46b-62 and 46b-82], [t]he court is not obligated to make express findings on each of these statutory criteria." (Internal quotation marks omitted.) *Grimm* v. *Grimm*, 276 Conn. 377, 397, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006).

Moreover, our Supreme Court has explained that the

determination of whether a party has "ample liquid funds [is] not an absolute litmus test for an award of counsel fees. . . . [To] award counsel fees to a spouse who had sufficient liquid assets would be justified, if the failure to do so would substantially undermine the other financial awards." (Citation omitted; internal quotation marks omitted.) *Maguire* v. *Maguire*, 222 Conn. 32, 44, 608 A.2d 79 (1992). In other words, "an award of attorney's fees in a marital dissolution case is warranted only when at least one of two circumstances is present: (1) one party does not have ample liquid assets to pay for attorney's fees; *or* (2) the failure to award attorney's fees will undermine the court's other financial orders." (Emphasis added.) *Ramin* v. *Ramin*, 281 Conn. 324, 352, 915 A.2d 790 (2007). The trial court expressly relied on the latter justification in awarding the plaintiff attorney's fees in this case.[5] Although the court found that there was "a significant discrepancy between the parties' financial resources, including liquid assets," it made no finding as to whether or not the plaintiff had ample liquid assets to pay her own attorney's fees, nor, as discussed herein, was it required to do so.[6] The court explicitly concluded that a denial of the plaintiff's motion for attorney's fees would undermine the other financial orders—the unallocated alimony and child support order.[7] Accordingly, the lack of an explicit finding that the plaintiff lacked ample liquid assets to pay her own attorney's fees had no bearing on the basis for the trial court's award. On the basis of the foregoing, we conclude that the trial court did not abuse its broad discretion in its award of $7500 in attorney's fees to the plaintiff.

The judgment is affirmed.

In this opinion, LAVINE, J., concurred.

[1] The defendant does not contest the reasonableness of the amount of attorney's fees awarded.

[2] The defendant also claims that the court erred in precluding him from introducing evidence of the plaintiff's expenses since the date of dissolution to demonstrate how the plaintiff spent the child support and alimony that he paid her. He argues that the court's ruling "that [the] plaintiff's expenses were not relevant is contradictory to the weight of controlling case law, inasmuch as the parties' expenses go to the parties' station and needs pursuant to the [General Statutes] § 46b-82 criteria that the court must consider." (Emphasis omitted.) At the hearing, however, the defendant did not seek to introduce evidence of the plaintiff's expenses for the purpose of demonstrating her needs or station. He sought to explore her expenses since the date of dissolution to demonstrate that she "dissipated" the money that she received from the defendant pursuant to the unallocated alimony and child support, and that she should have saved a portion of that money to pay for her attorney's fees instead of spending it on her "extravagant lifestyle." As explained herein, the trial court repeatedly rejected the defendant's argument that the plaintiff should have saved some of the money that he had paid to her as child support and alimony to pay for her attorney's fees. Indeed, the defendant cannot reasonably argue that the plaintiff should have saved the child support that she had received from the defendant to pay her attorney's fees. Similarly, the court's rejection of the defendant's argument is consistent with the well established purpose of alimony, to satisfy the obligor's continuing duty to support his or her former spouse.

Moreover, the defendant argues that it "is also common sense [that] these expenses relate directly to the amount of liquid funds available to a party to pay her attorney's fees, and the reasons she lacks funds." As explained

herein, the court did not award the plaintiff attorney's fees on the ground that she lacked ample liquid funds to pay them. Accordingly, the defendant's argument in this regard is unavailing.

[3] In fact, the dissolution judgment required the plaintiff to pay the defendant $1 per year as alimony. The defendant notes this obvious scrivener's error to argue that the court was unaware of the amount of alimony and child support that he had paid to the plaintiff since the date of dissolution. As discussed in footnote 4 of this opinion, this argument is unfounded.

[4] The defendant contends that the court erroneously found that the plaintiff pays 45 percent of the children's extracurricular expenses. Although the dissolution judgment provided that the parties would pay their pro rata share of those expenses, the plaintiff testified at the hearing that she paid 45 percent of them. Because the court was entitled to credit that testimony, its determination was not clearly erroneous.

[5] The defendant devotes a considerable portion of his brief to arguing that the court erred in precluding him from introducing evidence of prior court orders, specifically the unallocated alimony and child support order issued at the time of dissolution. The dissolution judgment was marked as an exhibit at the hearing, and the court further confirmed that it was part of the court file. The unallocated order was also referenced repeatedly throughout the hearing by both parties, by their attorneys, and by the court. The record reflects that the court was fully aware of the unallocated order and the amounts received by the plaintiff pursuant to that order. For example, at the hearing on the plaintiff's motion for attorney's fees, the defendant testified that he objected to that motion because "she's received over $400,000 in alimony in the last two years and has the ability to pay her own legal fees." The defendant further testified that, since the date of dissolution, he had paid the plaintiff approximately $1,570,000 in unallocated alimony, and that he paid her $320,000 in 2018. Thus, the defendant's contention that the court was unaware of the unallocated alimony and child support order is unfounded.

[6] The court did find that, at the time of the hearing, the plaintiff had $1000 in her two checking accounts. This finding is not supported by the record. Because, however, the court based its award of attorney's fees on the ground that the failure to award them would undermine the other financial orders, and not because the plaintiff lacked ample liquid funds to pay them herself, the court's erroneous determination of the amount the plaintiff had in her bank accounts is immaterial.

[7] In his objection to the plaintiff's motion for attorney's fees, the defendant argued that the plaintiff had ample liquid funds to pay her own attorney's fees "as a result of the trial court's judgment." The defendant contended that he had paid the plaintiff more than $900,000 in alimony and child support since January 1, 2015, and that she "cannot squander the income she received [from the defendant] and then be rewarded by this court for needless spending based on her claim of lack of funds. The plaintiff was well aware of the impending action to modify the child support order as same was clearly set forth in the agreement which specifically states that child support would be paid pursuant to the guidelines upon termination of alimony. She had an obligation to financially plan for same."

In response to the defendant's offer of evidence pertaining to the manner in which the plaintiff spent the unallocated alimony and child support that she received from the defendant, the court responded: "The court sees it as there was only an award of unallocated alimony and child support. And the plaintiff was charged with using those funds to, under the separation agreement, pay the mortgage on the house and other expenses for support of the children and support of the family. And to then bootstrap the argument into saying that some portion of that had to be saved for future litigation would be unreasonable.

"And to then compel an argument by the plaintiff that she was unreasonable with her—argued she was reasonable in her savings of that money already allocated after an analysis of the relative abilities to pay, now she should have saved some other portion of that for future litigation I think would be untenable.

"So there's already an allegation based on financial ability. Jobs, no jobs, assets, allocation, and one party got one amount, one party got the other amount. So I don't think it's appropriate now to start doing a dive into bank records on who bought coffee, who bought meals, and what the plaintiff did or didn't do with the money allocated to her for support of the family, savings or not, to now say she didn't save it for future proceedings. It's a matter of assets and income."

The court further noted that it would consider "earnings and whether she's working, could have worked, et cetera," "the estate and needs of the parties," and the factors enumerated in § 46b-82. The court reiterated, however, "[b]ut I don't think that turns into after having received an allocation of alimony and child support under a prior court order, whether the use of that allocation in the party's discretion . . . was appropriate." The court expounded: "[W]e have evidence on whether the plaintiff worked, if she could have worked, what her income is, what her income was, what her income may be. But you say what she—if she should have saved her child support, she should have saved part of the unallocated award of child support and alimony and whether she should have bought Starbucks coffee or a birthday present, which is what you were getting to, I'm not entertaining that."

———————————————————