## CAROL CONOVER MAGUIRE *v.* WALTER LAURENCE MAGUIRE ET AL.
### (14302)

PETERS, C. J., SHEA, CALLAHAN, GLASS, COVELLO, BORDEN and BERDON, Js.[1]

Argued December 4, 1991—decision released May 5, 1992

[1] This case was orally argued on December 4, 1991, before a panel of this court consisting of Justices Shea, Callahan, Glass, Borden and Berdon. Subsequently, the Chief Justice determined that the case was appropriate for en banc consideration. Chief Justice Peters and Justice Covello were added to the panel and considered the case upon full review of the record, briefs and transcript of the December 4, 1991 oral argument. See *State* v. *Mooney,* 218 Conn. 85, 85 n.1, 588 A.2d 145, cert. denied, U.S. , 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991).

*Wesley W. Horton,* with whom were *Richard B. Cramer, Susan M. Cormier* and, on the brief, *Jeffrey A. Hoberman,* for the appellant (named defendant).

*Gary I. Cohen,* with whom was *David R. Schaefer,* for the appellee (plaintiff).

BERDON, J. This is an appeal from a judgment dissolving the parties' marriage wherein the defendant,[2] Walter L. Maguire, claims that the trial court mistakenly: (1) corrected in an articulation an error made in a prior articulation; (2) ordered the defendant to reimburse the plaintiff, Carol C. Maguire, the amount of $50,000 for her counsel fees; (3) awarded personal property to the plaintiff, except for property owned by the defendant, without stating how any potential disputes that might arise over the ownership of the property should be resolved; and (4) cited as authority in making all of its awards, including periodic alimony, only General Statutes § 46b-81 and later declared in an articulation that it had relied upon the criteria of General Statutes § 46b-82 for the award of periodic ali-

[2] The defendants Peter Bentley and Premier Title and Mortgage Company, who were made parties to the original action as the legal owners of property in which the named defendant had a beneficial interest, are not involved in the present appeal. All references to the defendant are to Walter L. Maguire

mony.[3] The defendant appealed to the Appellate Court and we transferred the appeal to this court in accordance with Practice Book § 4023. We affirm the trial court's judgment except for the award of counsel fees to the plaintiff.

The following facts are relevant. The trial, extending over a period of approximately one month, concluded on December 6, 1989. On February 23, 1990, the trial court rendered a judgment dissolving the marriage and making financial orders. In its detailed memorandum of decision, the trial court set forth the causes of the marital breakdown, distributed the marital assets and ordered periodic alimony. The court described the financial relationship between the parties during their forty year marriage as follows: "In all the years of their

---

[3] General Statutes § 46b-81 provides in relevant part: "(a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the superior court may assign to either the husband or wife all or any part of the estate of the other. . . .

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

General Statutes § 46b-82 provides in relevant part: "At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. . . . In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

marriage as he bought, and sold, and rented out real estate, and dealt in the stock market, the defendant never placed any property in his wife's name singly or jointly with him. The house she has lived in for many years is owned by the defendant as [are] all the other real properties and all personal property. He has provided for their children who are totally self-sufficient. He has provided for the future for his secretary and for himself, but not for his wife. He dismissed her fears and concerns for her future with the comment 'the State will take care of you.' He argued, at the trial of this case, that her real estate earnings would provide her with a comfortable living. I disagree. This woman is sixty years old, and past her peak as an active real estate saleswoman, and the real estate business is in shambles at present and likely to continue so for a while. She was not asked or permitted by the defendant to take part in his business ventures through the years, and by his view has no right to any of the material wealth he has generated. Her participation as the linch-pin of the family, as the wife, lover, mother, homemaker, nurse, confidant, etc., means, and has meant, nothing to the defendant who indicates that the monthly allowance the plaintiff receives, the home she lives in and the knowledge that he pays the bills, are all she is entitled to. The defendant actually stated in court that his only fault is that he has been 'too generous' to his wife." The trial court concluded that it would be equitable to divide their net assets equally between them.

In making the division, the valuation of the assets became an important issue. The single most valuable asset was 1,666,902 shares of ORS Corporation (ORS) stock, which represented 25 percent of the outstanding shares of the company. At the time of trial, the ORS stock was publicly traded over-the-counter and the National Association of Securities Dealers (NASD)

reported its market price as $1.25 per share. On the basis of this per share price, the stock in ORS had a market value of $2,083,628, the value that the plaintiff urged the trial court to accept. Arthur Haut, a certified public accountant and adjunct professor at the Yale Law School, was called as a witness by the plaintiff to support her valuation of the ORS stock. Haut testified that although the number of shares held by the defendant could give him working control of the corporation, which would result in a greater market value, the publicly quoted NASD market price was the appropriate basis for valuation of the ORS stock and, therefore, he supported the plaintiff's valuation. The defendant argued that the stock should be valued at only $566,368, approximately 25 percent of the NASD market value, because of certain trading restrictions imposed by the Securities and Exchange Commission. Accordingly, the parameters for the valuation of the ORS stock, as argued by the parties, were the defendant's low of $566,368 and the plaintiff's high of $2,083,628.

On April 20, 1990, the defendant took this timely appeal.[4] On July 12, 1990, the defendant moved for an articulation (articulation I), pursuant to Practice Book § 4051[5] requesting, in part, an articulation of the valu-

---

[4] On April 10, 1990, the trial court denied the defendant's motion "to open, set aside judgment and for new trial."

[5] Practice Book § 4051 provides in pertinent part: "A motion for rectification or articulation shall be filed in triplicate with the chief clerk of the supreme court and forwarded by such clerk to the trial judge. The trial judge shall file the ruling on the motion with the chief clerk of the supreme court.

"Any motion seeking corrections in the transcript or the trial court record which depend on proof of matters not of record or seeking an articulation or further articulation of the decision of the trial court shall be determined by the judge of the trial court whence the appeal is taken or the reservation is made. The trial court may make such corrections or additions as are necessary for the proper presentation of the preliminary statement of issues or for the proper preservation of questions reserved; or the

ation that the trial court had placed on the ORS stock. The trial referee who presided over the trial was on vacation until October 15, 1990, and the motion was not called to his attention until sometime after that date. On November 8, 1990, the trial court granted the motion for articulation I and responded that the 1,666,902 shares of ORS stock had an aggregate value of "[o]ver $4,000,000." On December 10, 1990, the defendant filed his brief in the Appellate Court, arguing, in part, that the court's valuation of the ORS stock was "clearly erroneous."

On December 18, 1990, the plaintiff moved for a second articulation (articulation II) requesting, in part, an articulation of the valuation that the trial court had placed on the ORS stock. The defendant moved to strike the second request for articulation on the grounds that it was untimely, it duplicated articulation I, it was an attempt to have the court revalue assets and the defendant would be prejudiced because he already had filed his brief in the Appellate Court. On March 15, 1991, the trial court denied the defendant's motion to strike and granted articulation II. The court corrected the valuation it had placed on the ORS stock from "[o]ver $4,000,000" to $2,083,628. The court added the following regarding its valuation of the stock: "The court's answer to the defendant-appellants' question 1b in his motion for articulation dated July 12, 1990 [articulation I] was simply a mistake, to be corrected, and not to be persisted in and compounded. I have corrected my error to show the market price of Mr. Maguire's stock to be $2,083,628 which is the result

---

trial court may approve a stipulation of counsel that such a correction or addition be made, provided the motion or stipulation is presented before the appeal is ready to be assigned for hearing and only by leave of the supreme court thereafter. The action of the trial judge as regards such correction or addition may be reviewed by the supreme court under Sec. 4054. Nothing herein is intended to affect the existing practice with respect to opening and correcting judgments and the records on which they are based."

of the current market price per share times the number of shares. ($1.25 x 1,666,902)." Subsequently, the defendant filed in the Appellate Court a motion for review of the trial court's failure to strike the motion for articulation II and to strike its contents. The Appellate Court granted the motion for review, but denied the relief sought. The Appellate Court, sua sponte, permitted the defendant to file a substitute brief, which was done by the defendant. Thereafter, the appeal was transferred to this court.

I

The defendant argues that articulation II, relative to the valuation of the ORS stock, was untimely and improper. It is clear that the Practice Book provision has no time limits within which to file a motion for articulation. Practice Book § 4051. Accordingly, the time in which it may be filed is left to the sound discretion of the trial court, subject to review. Practice Book § 4054;[6] see W. Moller & W. Horton, Connecticut Practice, Supreme Court and Appellate Court Rules and Forms (1992) § 4051, authors' comments, p. 128.

We first note that upon the granting and filing of articulation II, the defendant sought review by the Appellate Court pursuant to Practice Book § 4054, on the same grounds upon which he relies in this appeal. The Appellate Court, on review, refused to strike articulation II. Although we are not bound by that prior decision; see *State* v. *Holloway,* 22 Conn. App. 265, 276, 577 A.2d 1064, cert. denied, 215 Conn. 819, 576 A.2d 547 (1990); under the facts of this case, we see no reason to disturb the decision of the Appellate Court.

---

[6] Practice Book § 4054 provides in relevant part: "Any party aggrieved by the action of the trial judge as regards rectification of the appeal or articulation under Sec. 4051 may make a written motion for review to the [appellate court], to be filed with the chief clerk of the [appellate court], and the [appellate] court may, upon such a motion, direct any action it deems proper. . . ."

In *State* v. *Wilson,* 199 Conn. 417, 513 A.2d 620 (1986), we had the occasion to consider the substantive parameters of the motion for articulation. In *Wilson,* we held that "an articulation presupposes ambiguity or incompleteness in the legal reasoning of the trial court in reaching its decision. An articulation may be necessary where the trial court fails completely to state any basis for its decision . . . or where the basis, although stated, is unclear." (Citations omitted.) Id., 434.

When the trial court filed articulation I and placed a value of "[o]ver $4,000,000" on the ORS stock, an obvious ambiguity developed between the trial court's valuation and the trial court's expressed intent to divide the net assets equally between the parties, as stated in its original memorandum of decision. Finding the stock to have a value of $4,000,000, and assigning the shares of that stock to the defendant would have resulted in the defendant receiving substantially more than 50 percent of the net assets as intended by the trial court. See pages 40–42, infra. It was appropriate for the plaintiff to file a motion for articulation to have the court clarify its decision. *State* v. *Wilson,* supra, 435–36. Accordingly, we conclude that the second motion for articulation was timely filed and that the trial court appropriately corrected the ambiguity between its intent to divide the estate equally and the value it had placed on the ORS stock.

The defendant argues that it was beyond the court's power to change in articulation II the valuation placed on the stock in articulation I. He would be correct if the change had been one of substance. *Morici* v. *Jarvie,* 137 Conn. 97, 104, 75 A.2d 47 (1950); *Ferguson* v. *Sabo,* 115 Conn. 619, 621, 162 A. 844 (1932). A distinction, however, must be drawn between matters of substance and clerical errors, "the distinction being that mere clerical errors may be corrected at any time even

after the end of the term." *State* v. *Wilson,* supra, 436. A clerical "error does not challenge the court's ability to reach the conclusion that it did reach, but involves the failure to preserve or correctly represent in the record the actual decision of the court." *Ravizza* v. *Waldie,* 3 Conn. App. 491, 493, 490 A.2d 90 (1985). In other words, it is clerical error if " 'the judgment as recorded fails to agree with the judgment in fact rendered . . . .' " *Brown* v. *Clark,* 81 Conn. 562, 566, 71 A. 727 (1909), quoting *Goldreyer* v. *Cronan,* 76 Conn. 113, 115, 55 A. 594 (1903).

It is evident that the valuation of "[o]ver $4,000,000" for the ORS stock in answer to question 1b in articulation I was a clerical error.[7] The motion for articulation I was not filed by the defendant until five months after the trial court had filed its memorandum of decision, and it was not brought to the trial court's attention until eleven months after the close of evidence. Upon placing the valuation of $2,083,628 on the 1,666,902 shares of ORS stock in articulation II, the trial court clearly stated that its valuation in articulation I was an error.

The fact that it was a clerical error is fully supported by the record. The defendant agrees that the trial court, in accordance with its memorandum of decision, intended to divide the net assets equally between the plaintiff and the defendant. Valuation of the ORS stock at $2,083,628 is fully consistent with the trial court's expressed goal. On the basis of that valuation, each party would receive approximately 50 percent of the net assets.[8] The defendant was awarded all the ORS stock. If, in fact, the trial court had found the value

---

[7] Furthermore, to the extent that it is unclear what the trial court meant by "a mistake" and "my error," we read an ambiguous trial record to support, rather than undermine, the judgment. *Bell Food Services, Inc.* v. *Sherbacow,* 217 Conn. 476, 482, 586 A.2d 1157 (1991).

[8] The following is a list of the assets less liabilities distributed by the court in its original memorandum of decision, together with the valuation placed

of the stock to be in excess of $4,000,000, the percentage of the estate going to the defendant would have been substantially higher than 50 percent—that is, approximately 61 percent.[9]

upon each asset by the trial court in articulations I and II. The defendant only challenges the valuation of the ORS stock.

"Plaintiff Carol Maguire

| | | |
|---|---|---|
| Her Inheritance and Assets | | $526,735 |
| 36 Liberty Street | | 686,000 |
| Grove Ave. Lot | | 184,000 |
| 40 Fence Creek Drive | | 296,000 |
| Contents of Liberty Street House | | 415,000 |
| Automobiles | | 17,500 |
| Lump Sum from Defendant (payable over 4 years) | | 1,500,000 |
| | Total | $3,625,235* |

"Defendant Walter Maguire

| | | |
|---|---|---|
| 15 Brookside Road | | 550,000 |
| 17 Wall Street | | 525,000 |
| 38 Fence Creek Drive | | 325,000 |
| Nortontown Road | | 122,000 |
| Idaho Real Estate | | 15,500 |
| Personal Property at #17 Wall Street and in Idaho | | 33,849 |
| Automobiles | | 14,800 |
| Checking Account | | 28,682 |
| Loan Receivable from Maguire Foundation | | 1,057,505 |
| Loan Receivable from Walter L. Maguire, Jr. | | 100,000 |
| Loan Receivable from Occidental Petroleum | | 11,000 |
| ORS Corp. 1,666,902 Shares | | 2,083,628 |
| U.S. Antimony 384,799 Shares | | 240,499 |
| U.S. Antimony Debentures | | 175,000 |
| Miscellaneous Stock | | 3,804 |
| | Subtotal | $5,286,266 |
| | Liabilities | ( 175,000) |
| | Lump Sum to Plaintiff | (1,500,000) |
| | Total | $3,611,266* |

*Plus ½ ORS Warrants"

[9] The valuation of ORS stock at $4,000,000 would have meant that the trial court assigned to the plaintiff an estate of $3,625,235 and to the defendant $5,611,266, a difference of $1,986,031.

The defendant relies upon *State* v. *Wilson,* supra. This, however, is not a correction similar to the one made in *Wilson*—that is, a change by the trial court in the substance of its decision after the permissible time. In *Wilson,* the trial court, in a decision rendered orally on the issue of whether the defendant had waived his right to counsel, found that the defendant had not requested counsel. Thereafter, the trial court filed a written memorandum of decision, referring to the defendant's expression of a desire to obtain a military lawyer. Id., 432. The state, several years later, in preparation for appeal, filed a motion for articulation "seeking a definitive ruling on whether the defendant had requested military counsel." Id. In its articulation, the trial court responded that the defendant was not credible and rejected the defendant's claim that he had requested a military lawyer. Id., 433. In *Wilson,* we pointed out that the trial court failed "adequately to explain how it could make two diametrically inconsistent findings on so crucial an issue." Id., 436. We concluded that the motion for articulation was, in fact, a motion for rectification—that is, a motion for a substantive change in the decision, pursuant to Practice Book § 4085, and "if timely raised," would have been proper. Id., 436.

In the present case, the court properly clarified its decision by fully explaining that the valuation in articulation I was an error that did not affect the original judgment dividing the net assets of the estate equally between the parties. Accordingly, the original judgment was correct, and the clerical error in articulation I was appropriately corrected in articulation II.[10]

---

[10] The defendant also claims that he was prejudiced because he filed his appellate brief after articulation I and before the plaintiff moved for articulation II. First, any prejudice to the defendant was corrected by the Appellate Court, when it, sua sponte, authorized the defendant to file a substitute brief. Second, we find it hard to understand the defendant's complaint about the plaintiff filing her motion for articulation II forty days after the answer

## II

The defendant next claims that the trial court's order requiring him to reimburse the plaintiff for $50,000 for the counsel fees she had paid as of the date of trial was improper because she had sufficient liquid assets to pay her own counsel fees. General Statutes § 46b-62,[11] which authorizes the award of counsel fees in an action for dissolution of marriage, provides in pertinent part that "the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities *and* the criteria set forth in section 46b-82." (Emphasis added.) General Statutes § 46b-82[12] provides that the court may take into consideration "the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 [assignment of property] . . . ." Accordingly, "the matters to be considered are essentially the same as those involved in making alimony awards . . . ." *Arrigoni* v. *Arrigoni*, 184 Conn. 513, 519, 440 A.2d 206 (1981). In *Murphy* v. *Murphy*, 180 Conn. 376, 380, 429 A.2d 897 (1980), we recognized this full legislative charge that the trial court should take into account all the statutory criteria when

to the defendant's articulation, when the defendant did not file his motion for articulation I until five months after the trial court's memorandum of decision was released. Third, in seeking to do justice, we cannot allow the mere clerical error on the part of the trial court to go uncorrected.

[11] General Statutes § 46b-62 provides in relevant part: "In any proceeding seeking relief under the provisions of this chapter and sections 17-323a, 17-323b, 45a-257, 46b-1, 46b-6, 46b-204, 47-14g, 51-348a and 52-362, the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82."

[12] See footnote 3, supra.

we held: "In 1973, the legislature enacted General Statutes § 46b-62 which provides that reasonable attorney's fees be awarded 'in accordance with [the parties'] respective financial abilities and the criteria set forth in section 46b-82.' This latter statute lists the criteria to be considered by the court in awarding alimony."

Notwithstanding this, the court in *Koizim* v. *Koizim,* 181 Conn. 492, 501, 435 A.2d 1030 (1980), held the following: "In making its determination regarding attorney's fees the court is directed by General Statutes § 46b-62 to consider the respective financial abilities of the parties. *Murphy* v. *Murphy,* [supra]. Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so." In *Fitzgerald* v. *Fitzgerald,* 190 Conn. 26, 33–34, 459 A.2d 498 (1983), the court made clear that "ample liquid funds" were not an absolute litmus test for an award of counsel fees. The court pointed out both in *Fitzgerald* and more recently in *Eslami* v. *Eslami,* 218 Conn. 801, 820, 591 A.2d 411 (1991), that to award counsel fees to a spouse who had sufficient liquid assets would be justified, if the failure to do so would substantially undermine the other financial awards.

In this case the plaintiff does not seek to have us revisit *Koizim,* but relies on *Fitzgerald* and *Eslami*; her reliance, however, is misplaced.

In the present case, the parties agreed that the plaintiff had, prior to the awards made in this case, over $500,000[13] in liquid assets. We conclude that the court abused its discretion in awarding $50,000 for counsel fees to the plaintiff because, unlike *Eslami,* in this case the trial court made no finding that such an award was necessary in order to avoid undermining its other finan-

---

[13] This sum represented cash and other liquid assets in the amount of $211,066 and $315,669 due from the estate of her deceased mother.

cial awards. Moreover, there is nothing in the record that would support such a finding. Contrary to the plaintiff's argument, such a finding cannot be implied from the court's award of counsel fees as part of its lump sum property distribution. Accordingly, we reverse the trial court's award of $50,000 for counsel fees to the plaintiff.

### III

The defendant also takes issue with the form of the trial court's order pertaining to the personal property located at 36 Liberty Street, Madison. The court ordered that the real estate located at 36 Liberty Street, together with the adjacent lot, go to the plaintiff "except for any items of personal property that the defendant proves to be his." A reciprocal order was entered giving the defendant the contents of the house at 17 Wall Street. The defendant argues that if a dispute were to arise as to ownership of the personal property, the court failed to provide a mechanism to resolve it.

The defendant misconstrues the order, which must be read together with the entire memorandum of decision.[14] We do not endorse the language used by the trial court regarding the personal property located at the households because it could be taken to contemplate some future litigation over those items. In the context of the entire decision, however, it is more reasonable

[14] The memorandum of decision ordered the following regarding the personal property: "That the plaintiff be declared to be the owner of the entire contents of the premises located at #26 Liberty Street, except for any items of personal property that the defendant proves to be his. The defendant is declared to be the owner of the contents of the premises located at #17 Wall Street, except for any items of personal property that the plaintiff proves to be hers; and specifically the defendant is ordered to deliver to the plaintiff from storage a marble-top buffet furniture piece, and a butler's desk, which property was a gift to the plaintiff from her aunt Mildred Herrick. The real property, #36 Liberty Street and #17 Wall Street, are both located in Madison, Connecticut."

to read the language pertaining to the exceptions as simply surplusage. It is obvious that the trial court intended the awards of the personal property contained in each household to be final, but that if either party determined that he or she held property belonging to the other, the plaintiff or the defendant could, on a voluntary basis, transfer it to the other. *Holmes* v. *Holmes,* 2 Conn. App. 380, 382–83, 478 A.2d 1046 (1984).

This construction of the trial court's order is fully supported by the record and its memorandum of decision. As previously indicated and conceded by the defendant, the trial court intended to divide the assets of the parties equally between them. The defendant does not dispute that the value of the entire contents of the property at 36 Liberty Street is $415,000 (seven paintings valued at $152,000 and other personal property valued at $263,000). It is obvious that any personal property from the Liberty Street house would be transferred to the defendant solely at the discretion of the plaintiff since this entire sum was included in the one-half of the estate that was assigned to her. Likewise, the value of the entire contents of the properties at 17 Wall Street and in Idaho valued at $33,849 was included in the one-half of the estate assigned to the defendant and the transfer of any of this property to the plaintiff would be solely at the discretion of the defendant. See footnote 8, supra. Furthermore, the trial court in articulation II made clear its intention of leaving the decision to the discretion of the plaintiff when it stated that the defendant could pursue his claim to the personal property "[b]y showing proof *agreed to, and acceptable to, the plaintiff."* (Emphasis added.)

IV

Finally, the defendant claims that the trial court predicated the award of alimony on an impermissible

statutory criterion because the court referred to § 46b-81 in the introductory section of its memorandum of decision before listing the court order. Section § 46b-81 pertains to the criteria for assignment of property. Any ambiguity as to the criteria upon which the court relied for alimony was put to rest in articulation II wherein the trial court indicated that it had relied upon the criteria in § 46b-82 for its award of alimony. There is no merit to this claim.

The judgment is reversed as to the award of attorney's fees only and is affirmed in all other respects.

In this opinion PETERS, C. J., GLASS, COVELLO and BORDEN, Js., concurred.

SHEA, J., with whom CALLAHAN, J., joins, dissenting in part. I disagree only with part III of the majority opinion, which holds that the provision of the judgment giving the plaintiff wife "the entire contents" of the house in Madison, which was also awarded to her, "except for any items of personal property that the defendant proves to be his," may be construed as if that exception had never been created by the judgment. The majority characterizes the exception as "simply surplusage," but no provision of a judgment may be so regarded if it may reasonably be interpreted to create a legal right. The language of the exception in this case plainly vests in the defendant husband the right to obtain any articles of personal property in the Madison home that he can "prove to be his" exclusively.

The plaintiff never filed a cross appeal from the judgment, but, nevertheless, has persuaded the majority to modify it by effectively deleting the language of the exception. This remarkable tour de force has been achieved through the vehicle of a motion for articulation filed by the plaintiff ten months after the rendition of the judgment containing two questions that elicited answers from the trial court as follows:

"3. (a) What did the court mean in Paragraph 2 of its order set forth on Page 6 of the February 23, 1990 Memorandum of Decision, after the award of the entire contents at #26 [sic] Liberty Street, by the phrase 'except for any items of personal property that the defendant proves to be his'?

"The court means exactly what it says.

"(b) How did the court anticipate that the defendant would procedurally pursue such a claim to personal property at #26 [sic] Liberty Street?

"By showing proof agreed to, and acceptable to, the plaintiff."

The majority regards those responses of the trial court as a confirmation of its view of the exception clause as mere surplusage, so that "if either party determined that he or she held property belonging to the other, the plaintiff or the defendant could, on a voluntary basis, transfer it to the other." There is nothing in the language of the judgment or in the memorandum of decision to support the majority's disregard of the unambiguous language of the exception. It is utterly absurd to suppose that such a clause was inserted without the intention of creating legal rights but merely to serve as an exhortation to the parties to "do the right thing" of their own accord. The articulation is not a confirmation of anything in the judgment but a modification thereof. It is the sole basis for the majority's supposition that the trial court never intended to create legal obligations between the parties by including the exception clauses in its disposition of the personal property allocated to each party. The majority, therefore, has permitted the responses to the motion for articulation to modify a term of the judgment from which no appeal was taken.

Accordingly, I dissent from part III of the opinion.