******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EVELEIGH, J., with whom ESPINOSA, J., joins, dissenting. I agree with and join part I of the majority opinion, which affirms the judgment of the trial court with respect to the award of lump sum alimony to the plaintiff, Marjorie Hornung. I respectfully dissent, however, from part II of the majority opinion, which concludes "that the trial court abused its discretion in awarding attorney's fees to the plaintiff." Specifically, I would conclude that the trial court did not abuse its discretion by ordering the defendant, Robert Hornung, to pay attorney's fees to the plaintiff where it determined that "to require the [plaintiff], who has minimal earning capacity and the responsibility for the primary care of four minor children age nine through fifteen, three of whom have learning issues, to pay these fees from her portion of the financial award . . . would undermine the purposes of [the] same . . . ." Accordingly, I would affirm the judgment of the trial court with respect to the award of attorney's fees to the plaintiff.

I agree with the facts and the procedural history set forth by the majority. Additional facts are set forth as necessary.

Contrary to the majority's representation, I can find no example of where this court has employed a purely mathematical calculation to determine whether the trial court abused its discretion in awarding attorney's fees. Furthermore, I would conclude that merely analyzing the percentage that the award of attorney's fees represents in the overall financial award is contrary to the mandates of General Statutes §§ 46b-62[1] and 46b-82, which require the trial court to examine certain equitable factors in deciding whether to make an award of attorney's fees. Those equitable factors are eviscerated when one attempts to boil down these considerations to a mathematical equation.[2]

Before addressing whether the trial court abused its discretion by awarding attorney's fees to the plaintiff in light of its other awards to her, I must address the defendant's claim that the trial court improperly awarded attorney's fees to the plaintiff because the parties' prenuptial agreement (agreement) bars the award of attorney's fees. In response to this claim, the plaintiff asserts that the defendant failed to preserve this claim for review as it relates to the $100,000 trial attorney's fees because he did not assert that the agreement barred the award at trial. Furthermore, the plaintiff asserts that the defendant waived his right to claim that the agreement barred the award of attorney's fees because he entered into stipulations that explicitly allow the plaintiff to apply for attorney's fees. I agree with the plaintiff.

First, despite the fact that the issue of attorney's fees was addressed at the trial in this matter, the defendant never claimed that the agreement barred the award of attorney's fees. Specifically, the trial court heard testimony relating to counsel fees and an affidavit of fees was submitted as an exhibit. Furthermore, the defendant had already agreed to pay $250,000 of the plaintiff's attorney's fees pendente lite. The defendant never contested the court's authority to award attorney's fees at trial. To the contrary, the defendant's claim that the agreement barred the award of attorney's fees was first raised well after trial, and only in relation to the motion for appellate attorney's fees. "It is well settled that [o]ur case law and rules of practice generally limit [an appellate] court's review to issues that are distinctly raised at trial." (Internal quotation marks omitted.) *Travelers Casualty & Surety Co. of America* v. *Netherlands Ins. Co.*, 312 Conn. 714, 761, 95 A.3d 1031 (2014); see also Practice Book § 60-5 ("[an appellate] court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial"). Accordingly, I would conclude that the defendant failed to preserve his claim that the agreement barred the award of attorney's fees as it relates to the $100,000 of trial attorney's fees.

Second, I would conclude that the doctrines of waiver and estoppel bar the defendant from claiming that the agreement bars the award of $40,000 in appellate attorney's fees. Specifically, the trial court concluded that the defendant had waived his right to claim that the agreement barred the award of attorney's fees because he had entered into numerous stipulations allowing for attorney's fees. Specifically, prior to judgment, the defendant entered into a stipulation in which he agreed to pay $250,000 of the plaintiff's attorney's fees and $100,000 of her expert fees. The stipulation also permitted the plaintiff to seek additional counsel fees in the future. The defendant also entered into four separate stipulations providing for payment of the plaintiff's counsel fees in order to induce the plaintiff to sign gift tax returns and joint income tax returns. The trial court properly recognized that this conduct constitutes a waiver of any right to claim that the agreement precluded an award of attorney's fees. It is well established that "waiver and estoppel are questions of fact" and that this court "will not disturb the trial court's findings unless they are clearly erroneous." (Internal quotation marks omitted.) *New Haven* v. *Local 884, Council 4, AFSCME, AFL-CIO*, 237 Conn. 378, 388, 677 A.2d 1350 (1996). I would agree with the trial court and conclude that the defendant cannot enter into a stipulation that the plaintiff is allowed to apply for attorney's fees and then later reverse course and assert that the agreement bars the award of any attorney's fees. Although the defendant was allowed to challenge the award of attorney's fees, by entering into these stipulations, the defen-

dant acknowledged that the trial court had authority to award the plaintiff attorney's fees in some circumstances. The defendant was aware of and understood the terms of the stipulations at the time they were presented to the court and by now asking this court to conclude that the agreement bars the award of any attorney's fees, the defendant "is taking a position clearly inconsistent with his previous position" and "would derive an unfair advantage from this change of position." *Dougan* v. *Dougan*, 301 Conn. 361, 374–75, 21 A.3d 791 (2011). Accordingly, I would conclude that the doctrines of waiver and estoppel bar the defendant from asserting that the agreement bars the award of attorney's fees. Therefore, I next turn to whether the trial court abused its discretion by its award of attorney's fees to the plaintiff in light of its other awards to her.

Section 46b-62 (a) governs the award of attorney's fees in dissolution proceedings and provides that "the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82." The criteria set forth in § 46b-82 (a) include: "the length of the marriage, the causes for the . . . dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ." In awarding attorney's fees under § 46b-62, "[t]he court is not obligated to make express findings on each of these statutory criteria." (Internal quotation marks omitted.) *Grimm* v. *Grimm*, 276 Conn. 377, 397, 886 A.2d 391 (2005).

"Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . *Koizim* v. *Koizim*, 181 Conn. 492, 501, 435 A.2d 1030 (1980). An exception to the rule announced in *Koizim* is that an award of attorney's fees is justified even where both parties are financially able to pay their own fees if the failure to make an award would undermine its prior financial orders . . . . *Eslami* v. *Eslami*, 218 Conn. 801, 820, 591 A.2d 411 (1991). Whether to allow counsel fees [under § 46b-62], and if so in what amount, calls for the exercise of judicial discretion. . . . *Holley* v. *Holley*, [194 Conn. 25, 33–34, 478 A.2d 1000 (1984)]. An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did. *Unkelbach* v. *McNary*, 244 Conn. 350, 374, 710 A.2d 717 (1998) . . . ." (Citation omitted; internal quotation marks omitted.)

*Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 386, 999 A.2d 721 (2010).

In its memorandum of decision, the trial court predicated its factual findings with the following statement: "The court, having heard the testimony of both parties, and having considered the evidence presented at [the] hearing, as well as, inter alia, the factors enumerated in [§ 46b-82] . . . hereby makes the following findings . . . ." The trial court then proceeded to make the following factual findings in relation to its award of attorney's fees: "That the court has reviewed the affidavit of attorney's fees . . . filed by the attorney for the [plaintiff] dated October 17, 2013; that the attorney's fees incurred by the [plaintiff] through October 16, 2013, in the amount of $116,103.24, are fair and reasonable under all the circumstances; that to require the [plaintiff], who has minimal earning capacity and the responsibility for the primary care of four minor children age nine through fifteen, three of whom have learning issues, to pay these fees from her portion of the financial award . . . would undermine the purposes of same; and that it would be fair and equitable for the [defendant] to pay same. *Maguire* v. *Maguire*, 222 Conn. 32, [44, 608 A.2d 79 (1992)]." The trial court further awarded the plaintiff an additional $40,000 in appellate attorney's fees, determining that the plaintiff needed "reasonable access to the court system [to] defend an appeal that [the defendant had] made."

The majority concludes that "the trial court abused its discretion in making the attorney's fees awards because the plaintiff received ample liquid funds as a result of the trial court's judgment, and the trial court's determination that not awarding attorney's fees to the plaintiff would undermine its other awards was unreasonable." I disagree.

In support of its position, the majority reasons that "the plaintiff would receive liquid assets totaling $2,577,000 within three months of the judgment. The trial attorney's fees award represents only 4 percent of this amount." (Footnote omitted.) The majority further reasons that "[t]he combined trial and appellate attorney's fees awards represent less than 6 percent of this amount." See footnote 34 of the majority opinion. This analysis is misplaced.

I also disagree with the majority that the appellate stay on the trial court's financial orders does not justify the appellate attorney's fees award "because the trial court could have terminated the stay sua sponte, and because the plaintiff did, in fact, successfully move to terminate the stay on several of those orders."

In analyzing the defendant's claim that the trial court's award of attorney's fees was unreasonable, we must be mindful that "[a]n abuse of discretion in granting counsel fees will be found only if [an appellate

court] determines that the trial court could not reasonably have concluded as it did." (Internal quotation marks omitted.) *Unkelbach* v. *McNary*, supra, 244 Conn. 374. We are not to substitute our judgment for the trial court, but only to determine if, based on the record before it, the trial court could have reasonably concluded as it did. Furthermore, it is important to remember that in determining whether to award attorney's fees, the trial court must determine "[w]hether a spouse has *'ample liquid funds'* with which to pay counsel fees . . . . This makes necessary an examination of the total assets of the parties *at the time the award is made.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Anderson* v. *Anderson*, 191 Conn. 46, 59, 463 A.2d 578 (1983).

I respectfully disagree with the majority's conclusion that the plaintiff had ample liquid assets to pay her attorney's fees at the time the trial court made the award. Specifically, the majority reasons that "although the plaintiff's amended financial affidavit showed only $3700 in her bank accounts, she was still receiving $40,000 per month in periodic alimony and child support, and attested to having personal property worth $305,810, a home worth $2.1 million, and other assets worth $79,794." First, the majority relies on the plaintiff's home and furnishings as available liquid assets that she could have used to pay her attorney's fees. This position is contrary to our case law. In *Anderson* v. *Anderson*, supra, 191 Conn. 60, which the majority cites favorably, this court reversed the judgment of the trial court awarding attorney's fees because it concluded that the trial court had improperly found that the defendant had ample liquid assets with which to pay the attorney's fees. Specifically, this court concluded that "a close inspection of the property disposed of by the judgment discloses that the family home was the only real asset capable of generating the funds to respond to the award of counsel fees. It, however, was not a 'liquid asset' although by our disposition of this appeal, the sale of the family home hereinafter ordered will yield liquid assets for both parties. Under the circumstances, the award of counsel fees to the plaintiff constituted error." Id. Similarly, in the present case, the marital home and the furnishings contained therein were not liquid assets available to the plaintiff to pay her own attorney's fees in the present case. Furthermore, although the plaintiff had other assets totaling $79,794, she also had liabilities of $68,142, not including the attorney's fees.

Second, the majority relies on the $2,082,000 payment due under the agreement. That payment was not available to the plaintiff because it was stayed pending the appeal. Although, as the majority states, the plaintiff could have moved to terminate the stay on that order or the trial court could have, sua sponte, terminated the stay on that order, the trial court was required to

award the attorney's fees based on the total assets at the time the award was made. The possibility of terminating the stay is not a reason to consider that payment as liquid funds available to the plaintiff. Furthermore, the fact that the stay on that award was terminated after the award of attorney's fees was made is not relevant to our review of whether the trial court could have reasonably made the award of attorney's fees at that time.

At the time the trial court made the award of attorney's fees in the present case, the only liquid assets available to the plaintiff was the $40,000 in monthly alimony and child support. The majority fails to acknowledge that, after taxes, the plaintiff's net monthly alimony and child support award was $23,600. In her affidavit, the plaintiff averred that she had $44,332 in monthly expenses and approximately $219,487 in attorney's fees. Accordingly, the trial court could have reasonably concluded that requiring the plaintiff to pay the attorney's fees out of the monthly alimony and child support would have undermined that award. This court has previously concluded that a trial court's award of attorney's fees was proper where "the [wife] would have been required to [forgo] a portion of the alimony award in order to satisfy her obligations to her attorney, thereby undermining its other orders." *Holley* v. *Holley*, supra, 194 Conn. 34–35; see also *Bornemann* v. *Bornemann*, 245 Conn. 508, 544–45, 752 A.2d 978 (1998) ("Of the significant assets that the [wife] received in the distribution, only the shares of stock would have been easily convertible to liquid form; the family residence and automobile were not liquid assets, the first three flights of stock options had not yet been exercised, and the fourth flight was not yet exercisable as of the date of dissolution. Further, the shares of stock owned outright that were awarded to the [wife] were not worth an amount sufficient to cover all of the fees owed. As a result, the court reasonably could have concluded that unless it awarded attorney's fees to the plaintiff, its other financial orders would be undermined, or that the plaintiff lacked the liquidity necessary to enable her to pay her own fees. We conclude, therefore, that the award of attorney's fees did not constitute an abuse of the court's discretion."). In comparison, the defendant in the present case had ample liquid assets available to him at the time that the trial court made the award of attorney's fees. Specifically, the defendant had more than $14 million in securities and bonds, which could have been easily converted to liquid form. See *Bornemann* v. *Bornemann*, supra, 544–45. On the basis of the foregoing, I would conclude that the trial court reasonably determined that the award of attorney's fees was necessary to avoid undermining its other awards.

As the majority recognizes, § 46b-62 (a) "authorizes the trial court to award attorney's fees in a dissolution

action when appropriate in light of the 'respective financial abilities' of the parties and the equitable factors listed in § 46b-82." Indeed, the trial court based its finding that not awarding attorney's fees would undermine the other financial awards in this matter on those equitable factors and the respective financial abilities of the party. Despite recognizing that those are the proper considerations, the majority appears to ignore those factors and rely entirely on a mathematical calculation of what percentage of the assets awarded to the plaintiff the attorney's fees represent.[3]

The majority further states that "[w]e have previously held attorney's fees awards amounting to a low portion of the payee's liquid assets to constitute an abuse of discretion, since the payee could easily have paid the fees out of those assets . . . ." The majority cites to *Maguire* v. *Maguire*, supra, 222 Conn. 32, and *Blake* v. *Blake*, 211 Conn. 485, 560 A.2d 396 (1989), in support of its position. I would conclude that *Maguire* and *Blake* are distinguishable from the present case.

In *Maguire*, this court did not rely on the percentage of the liquid assets that the award of attorney's fees represented, but instead concluded that "the [trial] court abused its discretion in awarding $50,000 for counsel fees to the plaintiff because . . . in this case the trial court made no finding that such an award was necessary in order to avoid undermining its other financial awards. Moreover, there is nothing in the record that would support such a finding." *Maguire* v. *Maguire*, supra, 222 Conn. 44–45. In the present case, the trial court explicitly determined that failing to award the plaintiff attorney's fees would undermine the other financial awards and pointed to the evidence in the record that supported that finding—namely, the plaintiff's limited earning capacity and her role as the primary caretaker for four minor children, three of whom have learning issues.

In fact, the evidence in the record supports the award of the attorney's fees on the other equitable factors, as well. First, the parties were married for seventeen years. Second, the trial court found as follows: "As to the breakdown of the marriage, the [plaintiff] testified at length about the [defendant's] frequent use of inappropriate language and his bizarre behavior, toward her and others, that was both demeaning and sophomorically . . . crude. In addition, he frequently mimicked her tendency to stutter when placed in stressful situations. She admitted to a [one year long] affair late in the marriage. That relationship, now long since ended, was not the cause of the breakdown. Evidence supports a finding that the cause for the breakdown is primarily attributable to the [defendant]. It is abundantly clear that right from the beginning, with the execution of the . . . agreement, that [the defendant] was not looking for a true marital partner, and has shut the [plaintiff]

out both fiscally and emotionally. He is a controlling, emotional bully, who has failed to appreciate [the plaintiff's] true worth as a wife, let alone her contributions. He offers her the minimum, which he believes that he can, in order to preserve the greater bulk of his assets for himself. The [defendant], she said, engaged in frequent, long-winded arguments about his plans, and badgered her to go along with his ideas, such as the . . . agreement. She told the court that she had a hard time being heard, that [the defendant] ignored her important requests, and that she did not feel that she was a real partner." Third, the trial court further found that "[t]he [defendant] is [fifty] years old and in general good health. He described a painful bout of neuropathy at one point during the marriage, but he is not prevented from working full-time. The [defendant] has a business degree from Syracuse University. His primary employment is with a family window company and its subsidiaries, which he operates along with his father and mother. It has proven to be very lucrative. He earns nearly $650,000 per annum from employment, and an additional $320,000 from his investments. The [plaintiff] is [forty-five] years old. She told the court that she suffers from a thyroid condition that affects her metabolism . . . and that she is borderline diabetic. The [plaintiff] has a degree from Emerson College. She was employed at the time of the marriage, but for the greater portion, she has been a full-time homemaker, and, at least up to the filing of the action, she has been the primary caretaker of the children. When she was employed outside of the home, principally prior to and during the early years of her marriage, her average earnings were approximately $30,000 per annum, with a maximum of between $65,000 and $70,000 per year." These significant findings on the equitable factors in § 46b-82 in the present case support the trial court's conclusion that failure to award attorney's fees would undermine the other financial awards and make this case easily distinguishable from *Maguire*, particularly where the trial court in that case "made no finding that [the award of attorney's fees] was necessary in order to avoid undermining its other financial awards." *Maguire* v. *Maguire*, supra, 222 Conn. 44–45.

Furthermore, *Maguire* is also distinguishable from the present case because, in *Maguire*, the wife had more than $500,000 in liquid assets prior to any financial awards from the dissolution action. Id., 44. The wife in *Maguire* had these funds in cash and from the estate of her deceased mother. Id., 44 n.13. Although the plaintiff in the present case will have liquid assets as a result of the financial orders related to the dissolution, there is no evidence that the plaintiff had any substantial liquid assets available to her outside the financial awards made in the dissolution action. Because the liquid assets available to the plaintiff in the present case are part of the dissolution action, those assets are part

of the mosaic that the trial court was fashioning when it awarded the attorney's fees. As a result, all of the assets in the present case are part of the orders that "were made at the same time and were predicated on the assumption that the total of all the awards regardless of the items to which they were apportioned, was reasonable in the light of the respective financial abilities of the parties and the criteria set forth in § 46b-82." *Eslami* v. *Eslami*, supra, 218 Conn. 820. In *Maguire*, the wife had an additional $500,000 in liquid assets that were not part of the awards and were available, unencumbered, to be used for the attorney's fees. Accordingly, I would conclude that *Maguire* is distinguishable from the present case.

Next, the majority relies on *Blake* v. *Blake*, supra, 211 Conn. 489, which involved a husband's claim that, in postdissolution orders, the trial court improperly awarded his wife attorney's fees of $10,000 plus expenses of $4974.63 relating to the husband's appeal. This court explained that "[a]t the hearing on attorney's fees the parties submitted current financial affidavits. The [wife's] affidavit showed a net worth of about $1,535,000. The parties stipulated that her liquid assets were approximately $630,000. The [husband's] net assets on his affidavit were $5,503,000." Id., 487–88. This court reasoned that "[i]n the light of the [wife's] net assets of [more than] $1,500,000 and her liquid assets of $630,000, it cannot reasonably be claimed that the failure to award $14,947.63 for attorney's fees and expenses would undermine or skew the substantial financial awards granted to her in the dissolution judgment. To award counsel fees under these circumstances is gilding the lily. The court abused its discretion in making such an order." Id., 489.

Although *Blake* appears to provide the majority with some support, it is distinguishable. In *Blake*, prior to making the award of appellate attorney's fees, the trial court stated "that part of the appeal was a pressure technique by [the husband], particularly and frivolous." (Internal quotation marks omitted.) Id., 488. In finding that the trial court abused its discretion in making the award of appellate attorney's fees, this court concluded that "[w]e found nothing frivolous in the appeal to this court. Punishment of a litigant should play no role in the determination of the issue of awarding attorney's fees." Id.[4] In the present case, there is no claim that the trial court's award of attorney's fees was intended to punish the defendant. Accordingly, I would conclude that *Blake* is distinguishable from the facts of the present case.

Furthermore, unlike the husband and wife in *Blake*, in the present case there is an approximate $21 million disparity in assets between the plaintiff and the defendant. Section 46b-82 (a) requires the trial court to consider the "amount and sources of income  . . .  estate

and needs of each of the parties . . . ." This court has repeatedly affirmed an award of attorney's fees where the evidence presented demonstrates that one party " 'has greater income available for support of the children than [the other]' and 'has greater income available to him than does [the other party] for purposes of paying counsel fees.' " *Unkelbach* v. *McNary*, supra, 244 Conn. 377; id. (affirming award of attorney's fees by trial court where trial court found it " 'fair and appropriate' " to award counsel fees to wife); see also *Murphy* v. *Murphy*, 180 Conn. 376, 380, 429 A.2d 897 (1980) (§ 46b-82 directs trial court to consider respective financial abilities of parties).

The majority also similarly reasons that "the trial attorney's fees award in the present case represents less than 2 percent of the lump sum alimony award alone, not including the $2,082,000 payment under the agreement or the $40,000 per month periodic alimony and child support payments. Similar to the comparison with the payee's liquid assets, attorney's fees awards that represent a small portion of the payee's lump sum alimony award have been held improper, because the payee could easily pay his or her own attorney's fees out of that award, even in the wake of strong equitable factors. See, e.g., *Turgeon* v. *Turgeon*, [190 Conn. 269, 270, 279–81, 460 A.2d 1260 (1983)] ($10,000 in attorney's fees and $1500 in expert witness fees awards, amounting to 8 percent of $140,000 in total lump sum alimony awards to wife, was abuse of discretion, though parties were married for twenty-three years and husband received $309,000 in assets, compared to wife's $100,000; property and alimony awards to wife were 'generous' and 'liquid assets being made available [to her were] ample'); *Koizim* v. *Koizim*, supra, 181 Conn. 493–501 ($55,000 in attorney's fees award, amounting to 9 percent of $600,000 lump sum alimony award and 4 percent of $1,410,000 in total assets, not including periodic alimony award, was abuse of discretion where parties were married for twenty-seven years, husband earned $208,000 per year, wife earned $1000 per year, husband was unfaithful, and wife made 'significant' contributions to marriage, 'both financial and otherwise')." I respectfully disagree with the majority's representation regarding these cases. First, in neither of these two cases did this court look to the percentage of the alimony award that the award of attorney's fees represented.[5]

Second, both of these cases are distinguishable from the present case. In *Turgeon* v. *Turgeon*, supra, 190 Conn. 282, this court relied on the fact that "[t]he [wife] for her part, had had some business training background and has indicated a desire to engage in business activity. The trial referee found her to be resourceful, energetic and in good health and concluded that she should obtain employment for which she is fitted." To the contrary, the trial court in the present case noted

the following: "the [plaintiff's] health issues; her lack of recent employment; her primary child care responsibilities of four children, which limits her ability to enter the workforce on a full-time basis; and her limited opportunity to acquire assets in the future." Accordingly, I find the reasoning of *Turgeon* inapplicable to the present case.

I would also conclude that *Koizim* v. *Koizim*, supra, 181 Conn. 500–501, is inapplicable to the present case. In *Koizim*, this court found that the trial court abused its discretion in awarding attorney's fees, stating that "[w]here, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so." Id., 501. This court did not, however, discuss the statutory factors or whether the failure to award attorney's fees would undermine the other financial awards. Indeed, subsequently, this court "[i]n *Arrigoni* v. *Arrigoni*, 184 Conn. 513, 519–20, 440 A.2d 206 (1981) . . . clarified *Koizim* by stating that we did not mean to imply that no allowance should be made if a party has sufficient cash to meet an attorney's bill . . . . If . . . the trial court concludes, based on the total financial resources of the parties, that denying an award of counsel fees would undermine its prior financial orders, then it may award counsel fees to the requesting party." (Internal quotation marks omitted.) *Eslami* v. *Eslami*, supra, 218 Conn. 820.

Instead, I would conclude that the case law of this state supports the conclusion that the trial court did not abuse its discretion in making the award of attorney's fees in the present case, where it found that failing to make such an award would undermine the other financial awards in the case. In examining our case law regarding the award of attorney's fees, it must be remembered that this court has long recognized that "[s]ince the trial court fashioned the other financial awards, it [is] uniquely qualified to determine whether those awards would be undermined by rejecting [a party's] request for counsel fees and expenses. All the awards were made at the same time and were predicated on the assumption that the total of all the awards regardless of the items to which they were apportioned, was reasonable in the light of the respective financial abilities of the parties and the criteria set forth in § 46b-82." (Internal quotation marks omitted.) *Misthopoulos* v. *Misthopoulos*, supra, 297 Conn. 388, quoting *Eslami* v. *Eslami*, supra, 218 Conn. 820.

For instance, in *Eslami* v. *Eslami*, supra, 218 Conn. 820–21, this court affirmed the award of attorney's fees and expenses to the wife despite her having sufficient assets to pay the award, including a $300,000 lump sum alimony award. In affirming the award of attorney's fees, this court reasoned as follows: "The evidence in this case, which includes a thirty year marriage, substantial continuing medical expenses because of the

wife's poor health, the clear responsibility of the husband as the cause of the marital breakdown, and the great disparity in the income and assets of the parties, provides adequate support for the court's conclusion that an appropriate allowance for counsel fees and litigation costs should be made so that the other orders would not be undermined." Id.

Similarly, in *Holley* v. *Holley*, supra, 194 Conn. 27, this court affirmed an award of attorney's fees despite other significant financial awards, including the husband's interest in the family residence, $15,000 in lump sum alimony, $10,000 to purchase an automobile, $35,000 annually in unallocated alimony and child support until the minor child reached the age of eighteen, which would then be reduced to $20,000 annually. In doing so, this court reasoned: "We agree with the defendant that the counsel fee award in this case is remedial in nature and is intended to restore her as nearly as possible to the position she was in prior to the dissolution of the marriage. Moreover, the trial court could have reasonably found that if an award of counsel fees were denied, the defendant would have been required to [forgo] a portion of the alimony award in order to satisfy her obligations to her attorney, thereby undermining its other orders." Id., 34–35.

In 2010, this court again affirmed the award of attorney's fees in *Misthopoulos* v. *Misthopoulos*, supra, 297 Conn. 358. In *Misthopoulos*, the husband challenged the trial court's award of attorney's fees where the wife had received substantial assets, totaling approximately $3.2 million. Id., 361–62. The husband appealed from the judgment of the trial court, claiming that the award of attorney's fees was improper because the wife had sufficient liquid assets to pay the attorney's fees as a result of the other financial orders and that there was not sufficient evidence in the record to support a finding that denying the wife's request for attorney's fees would undermine the other financial orders in the case. Id., 383–84. This court rejected both of the husband's claims.

In *Misthopoulos*, this court first reasoned that $2.6 million of the $3.2 million in assets awarded to the wife consisted of the family home in which the wife and the parties' three minor children resided. Id., 386–87. In addition, some of the other assets awarded to the wife were not liquid. On the basis of these awards, this court explained that "we cannot conclude that the [wife] had ample liquid funds such that the trial court abused its discretion by awarding the [wife] attorney's fees." Id. In the present case, although the plaintiff was awarded many liquid assets, a significant portion of the financial award, namely $2.1 million, is comprised of the family home in which the plaintiff and the parties' four minor children reside. Furthermore, the $40,000 per month payment that the trial court ordered the defendant to

pay to the plaintiff includes child support for the parties' four minor children.

This court's analysis in *Misthopoulos* did not end there, however. This court then considered the husband's separate claim that there was not sufficient evidence in the record to support a finding that denying the wife's request for attorney's fees would undermine the other financial orders in the case. In doing so, this court explained as follows: "The record demonstrates that the [husband] has a significantly higher earning capacity than the [wife], and that during the parties' eighteen year marriage, the [wife] had been a stay-at-home mother for the last ten years of the marriage. This court has previously noted that '[s]ince the trial court fashioned the other financial awards, it [is] uniquely qualified to determine whether those awards would be undermined by rejecting [a party's] request for counsel fees and expenses. All the awards were made at the same time and were predicated on the assumption that the total of all the awards regardless of the items to which they were apportioned, was reasonable in the light of the respective financial abilities of the parties and the criteria set forth in § 46b-82.' " Id., 387–88.

This court further reasoned that "the financial orders of the trial court required the [wife] to pay a share of many expenses, including the medical, day care, summer camp and extracurricular activities of the children, attorney's fees for the guardian ad litem and a portion of her own attorney's fees, including for her appellate counsel. All of the other financial awards, however, clearly required the [husband] to pay a larger portion of the expenses presumably in light of his significantly higher earning capacity. Accordingly, we conclude that the record supports a finding that the order requiring the [husband] to pay a portion of the [wife's] attorney's fees in this case was necessary so as not to undermine the other financial orders." Id., 388. Similarly, in the present case, the trial court's other financial orders require the plaintiff to pay one half of the cost of camp, tutors, lessons, ski lessons, Bar Mitzvahs, Bat Mitzvahs, and other extracurricular activities of the parties' children. Therefore, I would conclude that the trial court could have reasonably concluded that the failure to make an award of attorney's fees would undermine the other financial orders.

In *Weiman* v. *Weiman*, 188 Conn. 232, 237, 449 A.2d 151 (1982), this court affirmed the award of attorney's fees explaining that "[i]f the court could reasonably have concluded that the [wife's] financial resources, even when supplemented by the financial orders contained in the judgment, were necessary to meet her future needs and therefore were not available to pay counsel fees, there was no abuse of discretion. Although the [wife] had liquid assets resulting from the judgment,

in reviewing the overall awards, we cannot say that the trial court's order for counsel fees was unreasonable." In the present case, although the plaintiff is receiving significant assets as a result of the dissolution of the marriage, the trial court made findings regarding the plaintiff's limited future earning capacity based on her health condition, her role as a primary caregiver to the parties' minor children, and her lack of recent work experience. On the basis of the foregoing, I cannot say that the trial court's conclusion that the resources provided by the financial orders were necessary to meet her future needs and, therefore, were not available to pay counsel fees was unreasonable. See also *Grimm* v. *Grimm*, supra, 276 Conn. 403–404 ("trial court reasonably could have determined that the fee award was necessary to avoid undermining lump sum alimony order").

I would affirm the judgment of the trial court in its entirety. Therefore, I respectfully dissent from part II of the majority opinion.

[1] I note that § 46b-62 has been amended since the events underlying the present appeal. See, e.g., Public Acts 2014, No. 14-3, § 5. As the majority notes, these amendments have no bearing on the merits of this appeal. See footnote 8 of the majority opinion. Consequently, I refer to the current revision of the statute.

[2] The majority concludes that "these percentages elucidate the financial circumstances of the parties and help us determine whether the equitable factors justify the award of attorney's fees. . . . We instead evaluate the equitable factors in the context of these percentages." See footnote 40 of the majority opinion. I respectfully disagree with the majority that the use of percentages supports its conclusion that the trial court abused its discretion in awarding the attorney's fees in the present case. First, the majority's position is contrary to the statute. The statute does not require, or even suggest, that the trial court should examine what percentage of the total financial picture the attorney's fees represents. Instead, the statute clearly requires the trial court to examine whether the statutory factors support an award of attorney's fees. Second, the majority cannot point to any other case in which this court has used percentages in examining whether an attorney's fees award is appropriate. Accordingly, in light of our deferential standard of review in the present case, I cannot conclude that the trial court abused its discretion by not employing an analysis that is not required by either statute or our prior case law.

[3] The majority recognizes that "[a]s grounds for the trial attorney's fees award, the trial court cited the plaintiff's 'minimal earning capacity' and responsibility for caring for the parties' four minor children. The trial court further stated that it would be 'fair and equitable' for the defendant to pay the fees." But, then without analyzing the trial court's reliance on these factors, the majority summarily concludes "[a]lthough these factors strongly support the validity of the lump sum alimony award, they are outweighed in the attorney's fees context by the fact that the fees represent but a small fraction of the substantial liquid assets awarded to the plaintiff." In doing so, the majority fails to engage in any analysis necessary to support its conclusion that the trial court was unreasonable in determining that "the total of all the awards regardless of the items to which they were apportioned, was reasonable in the light of the respective financial abilities of the parties and the criteria set forth in § 46b-82." (Internal quotation marks omitted.) *Misthopoulos* v. *Misthopoulos*, supra, 297 Conn. 388. I respectfully disagree with the majority that the award of attorney's fees in the present case represents the "clearest circumstances" necessitating a finding that the trial court abused its discretion in making the award. (Internal quotation marks omitted.)

The majority asserts that "[u]ltimately, not including these percentages in our opinion, and simply listing the panoply of financial awards in our prior cases, along with the equitable factors, would be unhelpful to the bench, bar, and members of the public who rely on our opinions for meaningful

guidance." See footnote 40 of the majority opinion. I disagree. Instead, I would conclude that the analysis of the equitable factors as it relates to the award of attorney's fees in the present case is an essential component of this opinion. Particularly, in light of the majority's conclusion that it does "not contend that attorney's fees awards amounting to 4 or 6 percent of a spouse's assets constitute a per se abuse of discretion"; id; an analysis of the equitable factors in the present case is essential to understanding why the award of attorney's fees amounting to 4 or 6 percent of the spouse's assets is an abuse of discretion in the present case.

The majority analyzed the facts of the present case in light of the equitable factors of § 46b-82 in part I. In that part, the majority explained how the equitable factors supported the alimony award. Because their conclusion in part II necessitates a finding that the equitable factors do not support an award of attorney's fees, I would conclude that it is essential to provide a separate analysis of the equitable factors as they relate to the award of attorney's fees.

[4] But see *Ramin* v. *Ramin*, 281 Conn. 324, 353, 915 A.2d 790 (2007) (party's litigation misconduct can form part of basis of such award of attorney's fees).

[5] The majority reasons as follows: "Furthermore, we see no reason why such calculations should be barred in the attorney's fees context when both this court and the Appellate Court have used similar calculations to evaluate divisions of property under [General Statutes] § 46b-81 and alimony awards under § 46b-82, in conjunction with the equitable factors listed in those statutes, which are the same as those applicable under § 46b-62." See footnote 40 of the majority opinion. The majority then cites a number of cases from this court and the Appellate Court. See id. I find those cases distinguishable.

First, in *Greco* v. *Greco*, 275 Conn. 348, 355–56, 880 A.2d 872 (2005), this court reasoned that "[w]e must, however, consider, the paramount purpose of a property division pursuant to a dissolution proceeding [which] is to unscramble existing marital property in order to give each spouse his or her equitable share at the time of dissolution. . . . Under the circumstances of this case, an award of 98.5 percent of the marital estate, or $720,936.56 of the $731,870.21 estate, fails to capture this maxim." (Citation omitted; internal quotation marks omitted.) I would conclude that, contrary to the present case, it is appropriate to use a percentage when addressing whether a property division is an "equitable share" of the marital property. Furthermore, in *Greco*, this court did not end its analysis with a discussion of percentages, but fully examined the equitable factors that supported the award.

Second, in *Sweet* v. *Sweet*, 190 Conn. 657, 664, 462 A.2d 1031 (1983), the husband claimed it was improper for the trial court to award 90 percent of the family assets to the wife and this court reasoned that, even though the family home constituted 90 percent of the family assets, the statutory factors supported awarding it to the plaintiff. I would conclude that *Sweet* actually represents a rejection of a reliance on percentages and emphasizes the need to focus on the equitable factors.

Third, in *Turgeon* v. *Turgeon*, supra, 190 Conn. 279, this court did not rely on a percentage as its primary analysis of whether the property distribution was proper. Contrary to the majority's representation, this court did not conclude that an award of "approximately 76 percent" of the total marital assets was proper. Instead, this court merely stated that the property awarded to the defendant constituted 76 percent of the marital property, but this court then proceeded to engage in an analysis of all of the awards to each party to determine whether they constituted an abuse of discretion and did not rely on mere percentages.

Fourth, although this court did use percentages in discussing an alimony award in *Koizim* v. *Koizim*, supra, 181 Conn. 496, it only did so to address a dispute in the valuation of the award, not whether an alimony award was proper under § 46b-82.

Fifth, the Appellate Court also used percentages in addressing a claim that an alimony award was excessive in *Pellow* v. *Pellow*, 113 Conn. App. 122, 128–29, 964 A.2d 1252 (2009). In doing so, the Appellate Court was addressing the issue of whether the defendant was going to have the ability to pay the award, not whether the trial court properly applied the equitable factors. The defendant's ability to pay the attorney's fees in the present case is certainly not an issue, therefore, the use of percentages in *Pellow*, is inapplicable. Likewise, in *Valentine* v. *Valentine*, 149 Conn. App. 799, 807, 90 A.3d 300 (2014), the Appellate Court considered what percentage of the defendant's income the trial court's financial award represented and concluded that the trial court failed to consider whether the defendant would be able to comply with its financial orders. I would not dispute that, when considering whether one party is able to comply with financial orders

it is appropriate to consider whether the financial order represents a large majority of his or her income. In the present case, however, the majority relies on percentages as its only analysis of whether the award of attorney's fees was unreasonable in the present case. I would conclude that the majority's use of percentages is not in compliance with our prior case law.

―――――――――――――――――――――